In re LAMBETH CORPORATION,
Debtor.

NEAL MITCHELL ASSOCIATES,
Appellant,

v.

Joseph BRAUNSTEIN, Trustee, Appellee.

BAP No. MB 97–108.

United States Bankruptcy Appellate Panel
of the First Circuit.

Nov. 17, 1998.

Edward J. Collins, Law Offices, Cambridge, MA, on brief, for Appellant.

William M. Straus, Lang, Xifaras & Bullard PA, New Bedford, MA, on brief, Joseph Braunstein, Reimer and Braunstein, Boston, MA, for Appellee.

Before DE JESÚS, HAINES and CARLO, Bankruptcy Judges.

HAINES, Bankruptcy Judge.

Neal Mitchell Associates ("NMA") appeals the bankruptcy court's order disallowing its claim. Because we conclude that the court abused its discretion when it sustained the trustee's objection to NMA's claim without a hearing, we vacate the order and remand for further proceedings.

### Background

NMA worked for the debtor, The Lambeth Corporation ("Lambeth") as a consultant during the second half of 1990 and early 1991. In February of 1991 NMA commenced a state court action to recover $86,-500 allegedly due it for services rendered. A writ of attachment issued and was recorded as a lien on Lambeth's real estate.

Lambeth filed for Chapter 11 protection in late winter of 1992. Its Chapter 11 schedules listed NMA as holder of a disputed $350,000 claim ($115,000 disclosed as secured). About a year later it converted to Chapter 7. NMA filed a proof of claim for $126,248.69, asserting that the claim was secured to the extent of $86,500.[1]

The Chapter 7 trustee objected to NMA's claim in March of 1997.[2] The bankruptcy court convened a status conference on April 16, 1997, and issued an order setting a hearing on the objection to claim for September 11, 1997. The order required the trustee to amend his objection to NMA's claim on or

---

1. Although NMA initially sought interest as part of its secured claim, it concedes that its secured claim is no more than the $86,500 set by the state court attachment writ. (Tr. at 22–23, 35.)

2. The trustee's brief, grammatically awkward, objection took issue with the sufficiency of NMA's claim documentation and billing rates. It further asserted that NMA's billings included services rendered after its contract's termination.

before August 15. NMA was given until August 27 to respond. The parties complied.[3]

On September 11, 1997, the court commenced an evidentiary hearing on the objection. Following brief testimony by a single witness, counsel and the court discussed the nature of the claim dispute at length. Although the trustee sought disallowance or reduction of a substantial portion of the claim, he expressly recommended that NMA's secured claim be allowed in the amount of $32,225, (Tr. at 28, 32), and conceded that it might not be worth his while to challenge $29,000.00 of NMA's unsecured claim. (Tr. at 34.)

The judge described the trustee's objection as "very difficult to understand," even "incomprehensible," (Tr. at 36, 53, 56), and expressed "frustration at an inability to quite understand" the calculations underlying the dispute. (Tr. at 39.) She opined that the trustee's initial objection to NMA's claim "didn't pass statutory muster," (Tr. at 45), and questioned whether the amended objection accomplished anything more. (Tr. at 36.) The judge concluded that the objection was not sufficient to shift the burden of proof to NMA, but also expressed some concern over the sufficiency of NMA's proof of claim. (Tr. at 46, 53, 55.)[4] Finally, the colloquy ended with the judge remarking:

> Court: Okay, let's do this. All right, let's do this: You're (NMA) going to file an amended proof of claim. . . .
>
> . . . .
>
> And you'll compute out precisely how you—you'll give me all the back-up documentation with respect to the summary that you've given me in this bill review, okay?
>
> . . . .
>
> . . . So for example, let's just take it so we make sure we don't go through this, you know, again. Let's take, for example, just to pick something out, the September bill

dated September 23, 1990[,] in the amount of $21,250. What I want to do is I want to see attached a tab, whatever it is, you know, "X" number of hours worked times "Y" rate. And if, in fact, some of that $21,250 includes amounts that you say you paid to other people, then I want to see the back-up documentation of that. I want to see the canceled check. I want to see the agreement with the subcontractor, whoever it is. And then you'll give me all of that. . . .

> . . . .
>
> . . . So, [the attorney for NMA is] basically going to start from scratch. You're going to file a secured claim for $86,500 and an unsecured claim in the amount of "X," and you're going to explain to me how you got to each of those numbers. Is there any dispute with respect to the validity of the attachment?
>
> Attorney for Trustee: No, they—I [have] conceded that the attachment was recorded.
>
> . . . .
>
> Court: And is there any dispute that the money that you have in hand is all collat—is all subject to that attachment?
>
> . . . .
>
> Attorney for Trustee: No. . . .
>
> . . . .
>
> The Court: Okay. . . . I am ordering the claimant to file an amended proof of claim by—I'll give you a week. . . .
>
> . . . .
>
> And you have to serve it on the Trustee and Trustee's counsel, and the deadline for doing that is September 18th at four p.m.[.] Then if the Trustee wants to file an amended objection, he's got to do that by a date certain. . . .
>
> . . . .
>
> . . . [T]he Trustee's amended objection—no, it won't be an amended objection be-

---

3. The trustee again asserted that NMA's documentation was insufficient, that its billing rates (daily rather than hourly) were improper, and that post-contract work had been billed. NMA responded with a fifteen-page pleading. Spiced with invective, it controverted each of the trustee's points, asserted that the trustee's motives were impure, and argued that the objection vio-

lated Federal Rule of Bankruptcy Procedure 7011.

4. The court went so far as to suggest that the trustee's pleadings rendered him vulnerable to a Rule 11 motion. (Tr. at 54.)

cause this is a new plan [sic]. It'll be the Trustee's objection by September 25th at four p.m.. If no objection is filed, the claim will be allowed. Assuming there is an objection, I'll set a hearing date as soon thereafter as I can fit it and we'll go from there so that we can resolve the issue once and for all. . . .

. . . .

. . . So hopefully when we get all the paperwork together, we can sit down and read them together. Good. Thank you. (Tr. at 57–63.)

Again, both parties filed the required documents within the dictated time.[5] NMA filed a fifty-two page amended proof of claim, appending affidavits, the contract, its original proof of claim, the state court complaint and motion for attachment, six invoices from July through December 1991 billed at per-day rates, receipts for expenses, correspondence requesting payment, correspondence and a memorandum regarding a potential buy-out of the Debtor, and a summary (with graphs) of its pre-bankruptcy billings. Although extensive, the amended proof of claim did not include every item detailed in the court's September 8 instructions.

The trustee's response raised three issues: (1) services were billed on a daily rate as opposed to the hourly rates provided for by contract; (2) NMA billed $10,500 for a subcontractor retained without the debtor's consent and from whom the debtor received no work product; and (3) a substantial portion of the unsecured claim was for work performed after NMA had acknowledged it was no longer working for Lambeth. The trustee sought disallowance of the portion of NMA's secured claim attributed to the subcontractor's work and disallowance of its unsecured

---

5. The bankruptcy court docket has no entry for NMA's amended proof of claim, but it is included in the record on appeal and the clerk's date stamp attests that it was filed with the bankruptcy court on September 18, 1997.

6. The clerk's notice and the court's order issued pursuant to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Massachusetts governing objections to claims and motions procedures:

**OBJECTIONS TO CLAIMS**

claim for post-contractual work, but stated that he did "not recommend the denial of the remaining claim in full as there is clear evidence of the work performed by the claimant." However, he urged that his objection successfully shifted the burden back to NMA to "establish the specific time incurred [sic] providing services which will justify some payment to him."

As promised, the court calendared a hearing for December 4, 1997, and noticed it through the clerk's office in a *pro-forma* "Notice of Nonevidentiary Hearing and Response Deadline" on "Chapter 7 Trustee's Objection to Amended Proof of Claim." The notice, issued by a deputy clerk, set an objection/response deadline of November 24, 1997. It included the following, standard proviso:

The above hearing shall be nonevidentiary. If in the course of the nonevidentiary hearing, the court determines the existence of a disputed and material issue of fact, the court will schedule a further evidentiary hearing.

If no objection or response is timely filed, the court, in its discretion, may cancel the hearing and rule on the motion without a hearing or further notice. (See MLRB 9013–1(f)).

NMA's counsel arrived at the courthouse on the morning of December 4, 1994, ready to put on evidence. He was, however, unaware that on December 2, 1997, the judge had endorsed a margin order on the trustee's objection to NMA's amended proof of claim:

No response filed timely. Therefore the objection is sustained and the claim of Neal Mitchell Assocs. is disallowed. The 12/4/97 hearing is unnecessary and is canceled.[6]

(a) A party who files an objection to the allowance of any proof of claim shall state in the objection, with particularity, the factual and legal grounds for the objection, and shall make a recommendation to the Court as to whether the claim should be disallowed or allowed in an amount or with a priority other than as filed. . . .

(b) The procedures for motion practice and contested matters set forth in Fed. R.Bankr.P. 9013 and 9014 and MLBR 9013–1 shall govern objections to claims. Upon the filing of an objection to a proof of

NMA filed its notice of appeal on December 15, 1997.

### Arguments on Appeal

NMA asserts that the bankruptcy court abused its discretion by summarily sustaining the trustee's objection to its amended claim. Consistent with the court's direction at the September hearing, NMA understood that a continued hearing would be scheduled if, after it filed its amended claim, the trustee filed a timely objection. In NMA's view, after filing its amended claim, no further written submission on its part would be necessary.

Although the clerk's notice for the December hearing did not align with the court's instructions, NMA assumed that the notice issued for the purpose of setting a hearing date. It disregarded the notice's form requirement that it should file yet another pleading or risk disallowance of its claim because, simply put, those requirements were at odds with the court's express instructions.

NMA further contends that, in light of its consistent, timely efforts to press its claim during the entire course of Lambeth's bankruptcy, the court's ruling affronts equity. Moreover, it stresses that the trustee was not even asking that NMA's claim be disallowed *in toto*. Thus, in NMA's view, the inequity is compound: the court's order granted relief beyond that requested by the trustee.[7]

In response, the trustee relies on the hearing notice's explicit terms. He asserts that if

claim, the Clerk shall assign a deadline for a claimant to file a response to the objection and a hearing date. The party objecting to the claim shall serve upon the claimant and any other party entitled to notice a copy of the objection and the notice of response deadline and hearing date, and shall file a certificate of service with respect to the notice.

(c) If a claimant contests an objection to claim, the claimant shall file with the Clerk a written response to the objection, which response shall state with particularity why the proof of claim should be allowed, shall contain any documentation in support of allowance of the proof of claim, and shall state why the objection to the proof of claim should be overruled. Any response to an objection to claim shall be served on the party objecting to the claim and any other party entitled to notice of the response. A claimant who does not file a timely response to a properly served objection to claim will be deemed to have agreed that the objection to claim may be sustained. The Court, in its discretion, may cancel the hearing on any properly served objection to claim to which a timely response has not been filed and may sustain the objection to claim without further notice or hearing.

. . . .

(e) Within seven (7) days after the Court's action on any objection to claim, the objecting party shall submit a proposed order on the objections to claims.

MLBR 3007–1.

Rule 9013–1, referenced in subsection (b) of Rule 3007–1, governs bankruptcy court motions practice. Subsections (a) through (d) address the form, content, and support requirements for motions and the court's discretion to set matters for hearing or to establish a objections/response deadlines. Subsections, (g)–(i), govern expedited, emergency, and *ex parte* motions. Subsection (e) and (f) state:

(e) The Court may act upon a motion without a hearing under appropriate circumstance, including the following:

(1) if no objection is filed to the motion (A) within ten (10) days of the date of service of the motion, or (B) after any specific objection deadline established by the Court, whichever is later. . . .

. . . .

(f) The Court, in its discretion, may remove from the hearing list any motion that has been scheduled for hearing if no timely written response or objection has been filed. The Court may consider and act upon such matters without a hearing and may enter the proposed order submitted with the motion, request from the movant a modified order indicating the lack of timely opposition and the fact that no hearing was held, or enter an appropriate order of its own.

MLBR 9013–1(e)(f).

7. NMA advances two additional arguments: First, it urges that if the trustee had complied with the local rule requiring a moving party to submit a proposed order within seven days after the court's action, *see* MLBR 3007–1(e) ("Within seven (7) days after the Court's action on any objection to claim, the objecting party shall submit a proposed order on the objections to claims."), then NMA could have moved for reconsideration pursuant to Federal Rule of Bankruptcy Procedure 3008. It also asserts that the court committed legal error in its application of Massachusetts contract law. Despite our impression that these points are not well taken, we need not reach them because we sustain NMA's appeal on other grounds.

**6**

counsel for NMA found the notice ambiguous, he should have complied with it or sought clarification from the court. After all, he argues, the court had instructed NMA to start "from scratch" in revising its proof of claim. Further, intimating that NMA's failure to seek reconsideration in the bankruptcy court somehow impairs its rights on appeal, the trustee argues that NMA had every opportunity to do so below. Disputing NMA's contention that equity favors its position, he characterizes NMA's pursuit of its claim as revealing a "pattern of casual compliance with court ordered requests and deadlines."

### Jurisdiction and Standard of Review

*Jurisdiction*

■  We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(b). An order on an objection to claim is a final order. *See e.g., United States v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.),* 116 F.3d 1391, 1393–94 (11th Cir.1997); *Anderson v. Mouradick (In re Mouradick),* 13 F.3d 326, 326 (9th Cir.1994); *Adams v. Coveney (In re Coveney),* 217 B.R. 362, 363 (D.Mass.1998); *Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage),* 178 B.R. 222, 224 (9th Cir. BAP 1995). *See also In re Saco Local Dev. Corp.,* 711 F.2d 441 (1st Cir.1983) (order determining claim priority is final order for purposes of appeal).

*Standard of Review*

■  The bankruptcy court's order disallowing NMA's claim is premised on NMA's procedural default.[8] Its entry was an exercise of the court's general equitable powers. Accordingly, we review for an abuse of discretion. *See United States v. Kiester,* 182 B.R. 52, 53 (M.D.Fla.1995) (reversing order disallowing claim as abuse of discretion on account of inadequate notice and hearing opportunity); *In re Zeitler,* 221 B.R. at 937 (reviewing default judgment entered for nonappearance at trial for abuse of discretion); *In re Nunez,* 196 B.R. at 155 (orders avoiding liens and denying reconsideration reviewed for abuse of discretion); *see cf. United States v. Berger (In re Tanaka Bros. Farms, Inc.),* 36 F.3d 996, 998 (10th Cir. 1994) (review of order disallowing amended proof of claim); *Halverson v. Estate of Cameron (In re Mathiason),* 16 F.3d 234, 239 (8th Cir.1994) (reviewing refusal to reconsider order determining extent of secured claim); *United States v. Kolstad (In re Kolstad),* 928 F.2d 171, 173 (5th Cir.1991); (reviewing order permitting amendment to proof of claim); *Employment Sec. Div. v. W.F. Hurley, Inc. (In re W.F. Hurley, Inc.),* 612 F.2d 392, 395 (8th Cir.1980) (reviewing denial of motions for reconsideration of claim); *Liddle v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group Inc.),* 159 B.R. 420, 424 (S.D.N.Y.1993) (reviewing order denying creditor's motion to amend its claim and to amend judgment).[9]

---

8.  *In re Washington County Broadcasting, Inc.* states that an order disallowing a claim is "in essence" a default judgment. 39 B.R. 77, 79 (Bankr.D.Me.1984). Although an order disallowing a claim for reasons relating to motions procedures may function like a default judgment, it is not a default judgment *per se. See Nunez v. Nunez (In re Nunez),* 196 B.R. 150, 156 n. 6 (9th Cir. BAP 1996). As is the case when reviewing a default judgment, our review is in the context of a judicial "preference for disposing of cases on their merits." *Zeitler v. Seitler (In re Zeitler),* 221 B.R. 934, 937 (1st Cir. BAP 1998). *See also In re Tygart Indus.,* 139 B.R. 145, 146 (W.D.Pa.1991); *In re Washington County Broadcasting, Inc.,* 39 B.R. at 79.

9.  The trustee advances "abuse of discretion" as the appropriate standard of review while NMA states, without support, that our review "is for both error of law and abuse of discretion." This appeal's idiosyncratic nature makes this determi-

nation a little less clear-cut than the briefs suggest. Our review ought to be *de novo* if the bankruptcy court's ruling turned on the "interpretation and application of the [C]ode" and, thus, could be properly characterized as determining a legal question. *Bitters v. Networks Elec. Corp. (In re Networks Elec. Corp.),* 195 B.R. 92, 96 (9th Cir. BAP 1996). However, the court disallowed NMA's claim on the basis of the clerk's notice of hearing, and, per that notice, "in its discretion ... cancel[ed] the hearing and rule[d] on the motion without hearing or further notice." *See* Local Rule 9013–1(f) (providing the court with "discretion" to remove a matter from the hearing list for failure to file appropriate pleadings). MLBR 9103–1(f), *supra* note 6.

The court was managing its docket according to the local rule rather than interpreting and applying the Code. As such it was exercising "its broad, equitable powers" and we review its action for abuse of discretion. *In re Networks*

The bankruptcy court's discretion is "broad," but it is "not absolute." *See Independent Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir.1988); *accord In re Zeitler*, 221 B.R. at 937 (BAP panel quoting *Independent Oil & Chem. Workers of Quincy, Inc.*); *see also Aggarwal v. Ponce School of Med.*, 745 F.2d 723, 727 (1st Cir.1984) ("The cask which encases a judge's discretion, though commodious, can be shattered when a reviewing tribunal is persuaded that the trial court misconceived or misapplied the law, or misconstrued its own rules."). It abused its discretion if it ignored "a material factor deserving significant weight," relied upon "an improper factor," or made "a serious mistake in weighing" proper factors. *Independent Oil & Chem. Workers of Quincy, Inc.*, 864 F.2d at 929. *See also In re Zeitler*, 221 B.R. at 937 (quoting *Independent Oil & Chem. Workers of Quincy, Inc.*).

### Discussion

We may first reject the suggestion that NMA was obligated under the rules to move the court below for reconsideration prior to filing this appeal. Bankruptcy Code § 502(j) provides that an order on an objection to claim *"may* be reconsidered for cause," and *"may* be allowed or disallowed according to the equities of the case." § 502(j) (emphasis added). Federal Rule of Bankruptcy Procedure 3008 provides: "A party in interest *may* move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order." Fed.R.Bankr.P. 3008 (emphasis added). A motion for reconsideration pursuant to § 502(j) and Rule 3008 may be appropriate, or even preferable in many cases, but it is not a prerequisite to appellate review.[10]

We next turn to NMA's central contention. Our review is not based on the substantive criteria for allowing or disallowing claims under § 502 because the court did not rule on the substance of NMA's claim. To determine whether the bankruptcy court abused its discretion, we must consider whether the order disallowing NMA's claim *would* have withstood a motion for reconsideration or a motion for relief from judgment. NMA's appeal calls forth the same procedural fairness considerations pertinent to motions brought under Federal Rules of Civil Procedure 59 and 60(b). *See* Fed.R.Bankr.P. 9023, 9024; *In re Nunez*, 196 B.R. at 155–57 (abuse of discretion review of order granting motion without hearing and order denying reconsideration).

Motions for reconsideration are reviewed either under the "excusable neglect" or the "good cause" standard. Federal Rule of Civil Procedure 60(b) provides that "the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding," "[o]n motion and upon such terms as are just," upon a finding of "mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b). Applying the standard most favorable to the trustee's position, "excusable neglect," [11] we conclude that

---

*Electronic Corp.*, 195 B.R. at 96. *Compare In re Consolidated Pioneer Mortgage*, 178 B.R. at 225 (party's compliance with the notice requirements of Rule 3007 "is a question of fact" reviewed for clear error).

**10.** Our conclusion dovetails with the broad discretion courts wield when considering motions for reconsideration. *See* Fed.R.Bankr.P. 3008; *In re W.F. Hurley, Inc.*, 612 F.2d at 395 (reconsideration of a denial of claim is discretionary, not "a matter of right"); *Cassell v. Shawsville Farm Supply, Inc.*, 208 B.R. 380, 382 (W.D.Va. 1996) ("Courts have discretion to deny reconsideration upon a showing of cause but cannot permit reconsideration absent a showing of cause.").

**11.** There is some disagreement concerning the proper standard governing motions for reconsid-

eration of disallowed claims. *Compare In re Tygart Indus.*, 139 B.R. at 146–47 (applying excusable neglect standard in reviewing orders denying creditors's motion to reconsider or vacate order disallowing claim); *Sentry Fin. Serv. Corp. v. Pitrat (In re Resources Reclamation Corp. of America)*, 34 B.R. 771, 773–74 (9th Cir. BAP 1983) (rejecting "for cause" standard in favor of "a liberal rule of excusable neglect" in its § 502(j) review); *In re Leroux*, 216 B.R. 459, 463–64 (Bankr.D.Mass.1997) (discussing uncertainty over appropriate standard for motions for reconsideration pursuant to § 502(j) and applying "the strictest standard" of Fed.R.Civ.P. 60(b)(1)); *In re Washington County Broadcasting, Inc.*, 39 B.R. at 79 ("With respect to reconsideration of [a] claim under Bankruptcy Rule 3008, the Court concludes that a liberal standard of 'excusable neglect' is appropriate."), *with Cas-*

the order denying NMA's claim should be vacated.

■ Our conclusion follows application of the five-point excusable neglect formulation articulated by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Ltd.*, 507 U.S. 380, 387–397, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Stating that the determination of whether or not neglect is excusable "is at bottom an equitable one," dependent on the "circumstances surrounding the party's omission," *id.* at 395, 113 S.Ct. 1489, the Court identified the following five factors to advance the analysis:

the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.*[12] *See also In re Nunez*, 196 B.R. at 157 (applying the *Pioneer Investment Services*

test for excusable neglect in an abuse of discretion review of order voiding a lien and denying a motion for reconsideration).

■ *Pioneer Investment Services* recognized that the contours of the "excusable neglect" analysis depend on the context of the procedural lapse. Accordingly, we conduct our review with an eye to the excusable neglect factors articulated by the Third Circuit in *Consolidated Freightways Corp. of Delaware v. Larson*, 827 F.2d 916 (3d Cir. 1987). *Larson*, applying Federal Rule of Appellate Procedure 4(a)(5), reviewed a party's inadvertent noncompliance with the rules in terms of excusable neglect. *Larson* resonates with the case before us because NMA has professed inadvertent, rather than negligent, noncompliance with the hearing notice's response deadline. The *Larson* factors are:

(1) whether inadvertence reflects professional incompetence such as ignorance of

---

*sell*, 208 B.R. at 382–83 (application of excusable neglect standard in ruling on Rule 3008 motion, rather than Fourth Circuit's "for cause" standard, constituted legal error, taking pains to differentiate the two inquiries). *See also S.G. Wilson Co., Inc. v. Cleanmaster Indus., Inc. (In re Cleanmaster Indus., Inc.)*, 106 B.R. 628, 630 (9th Cir. BAP 1989) ("Rule 60 sets forth the standards for reconsideration of claims and helps define 'cause' under § 502(j).").

"Excusable neglect" imposes a greater burden on the party seeking relief than does "good cause." *See United States v. One Urban Lot Located at 1 Street A–1*, 885 F.2d 994, 997 (1st Cir.1989) ("At first blush it might seem inconsequential whether the review of motions to vacate is under Rule 55(c) or Rule 60(b), but the [good cause] standard for relief under Rule 55(c) is less demanding than its Rule 60(b) [excusable neglect] counterpart."); *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir.1989) (" 'Good cause' is a mutable standard, varying from situation to situation. It is likewise a liberal one—but not so elastic as to be devoid of substance. It derives its shape both contextually and by comparison with the more rigorous standard applicable to attempts to vacate judgments under Fed.R.Civ.P. 60(b); the 'good cause' threshold for Rule 55(c) relief is lower, ergo more easily overcome, than that which obtains under Rule 60(b)."); *see also Greene v. Union Mutual Life Ins. Co. of America*, 764 F.2d 19, 22 (1st Cir.1985) ("a party asking for relief from a judgment under Rule 60(b) typically must shoulder a fairly heavy burden.").

The First Circuit articulates "good cause" thus:

We have recently visited the compendium of factors which a district court should consider in "analyz[ing] the quantum and quality of [a

defaulted party's] 'cause' to see if it was 'good,' that is, if it warranted removal of an entry of default," and it would be pleonastic to rehearse that discussion here. It is enough to reemphasize that, while certain recurrent elements should be probed—the proffered explanation for the default; whether the default was willful, innocent, or somewhere in between; whether setting it aside would prejudice the movant's adversary; whether the movant possesses a meritorious defense; and the timing of the motion, Rule 55(c) determinations are case-specific. They must, therefore, be made in a practical, commonsense manner, without rigid adherence to, or undue reliance upon, a mechanical formula. When all is said and done, " 'good cause' is a mutable standard, varying from situation to situation."

*General Contracting & Trading Co. v. Interpole, Inc.*, 899 F.2d 109, 112 (1st Cir.1990) (quoting *Coon*, 867 F.2d at 76).

12. The Court granted *certiorari* to resolve a conflict regarding "the meaning of 'excusable neglect.' " *Id.* at 387. It reviewed and affirmed a court of appeals decision that reversed the district court's affirmance of the bankruptcy court's denial of a motion to extend the bar date for filing proofs of claims. The Court embraced a "flexible understanding of 'excusable neglect.' " *Id.* at 389. The Court's discussion was tailored to the context of Rule 9006(b), *see id.* at 389–91, but it analogized its operation to its role in other rules, including Rule 60(b). *See id.* at 391–95. As a consequence, we are at home employing the notion of "excusable neglect," as illuminated by *Pioneer Investment Services* in the context of the appeal before us.

the rules of procedure; (2) whether the asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court; (3) whether the tardiness results from counsel's failure to provide for a readily foreseeable consequence; (4) whether the inadvertence reflects a complete lack of diligence; or (5) whether the court is satisfied that the inadvertence resulted despite counsel's substantial good faith efforts toward compliance.

*Id.* at 919 (citations omitted). *See also In re Tygart Indus.*, 139 B.R. at 146–47 (quoting *Larson* and identifying its standard for review of Fed.R.App.P. 4(a)(5) motion to extend time for filing an appeal as more exacting than required under 60(b))).

█ In the case before us, the "reason" for NMA's failure to file a further written response to the trustee's objection supports its appeal. *Pioneer Inv. Servs.*, 507 U.S. at 395. NMA's counsel was understandably misled by contradictions between the court's express directions concerning the filings required to trigger further hearings and the *pro forma* response requirements outlined in the subsequently-issued notice of hearing. In September the court told the parties that there would be a continued evidentiary hearing if NMA filed an amended proof of claim and if the trustee objected to it. Those steps were taken, yet notice issued for a nonevidentiary hearing and provided that a further evidentiary hearing would be scheduled only if "the court determines the existence of a disputed and material issue of fact." More-

over, the notice included a procedural trap door jeopardizing NMA's right to any further hearing at all if it did not file yet another pleading. Given the history of the dispute, the sequence of filings, and the court's instructions, NMA's conduct amounted to, at worst, an understandable, inadvertent, excusable mistake. NMA's oversight, if it can fairly be called one, does not reflect "professional incompetence" or "counsel's failure to provide for a readily foreseeable consequence." *Larson*, 827 F.2d at 919.[13]

The trustee was not "prejudiced" within the meaning of *Pioneer Investment Services* by NMA's failure to file a response.[14] *Pioneer Inv. Servs.*, 507 U.S. at 395, 113 S.Ct. 1489. Again, given the history of the dispute, prior hearings, and the multiple filings, the trustee was well informed of NMA's position. One might well ask how one more prehearing filing by NMA could possibly have assisted in resolving the claims dispute. The fact that our decision to vacate the court's order disallowing NMA's claim *in toto* threatens the windfall the order bestowed upon the estate is irrelevant to our inquiry.[15]

We note, as well, that NMA's default was short lived and that it quickly appealed disallowance of its claim. The fact that proceedings below have been delayed is attributable primarily to entry of an order (on account of a perceived procedural default), without attention to the instructions expressly given the parties at the September 8 hearing.

NMA's diligence in pursuing its claim demonstrates that its failure to respond to the

---

13. We reject the trustee's argument that NMA should have made inquiries if it found the hearing notice ambiguous. The fact that the ambiguity was meaningful, or, more precisely, that the form of notice was not simply a mistake, was not apparent to NMA until after the entry of the court's order. We also reject the trustee's argument that the court's use of the term "from scratch" meant that the parties were to start claims objection *procedures* from scratch. Although NMA was instructed to take a fresh crack at its claim, providing specific documentation to answer the court's concerns, the transcript attests that the court's instructions were given in the context of setting the dispute for continued evidentiary hearings (unless the new filing appeased the trustee). The record is plain, too, that the principal reason for postponing trial and requiring new filings was the inadequacy of the trustee's first two attempts at composing an intelligible objection to NMA's claim.

Although NMA's amended claim might not have provided all the specification sought by the court and the trustee—time was not billed hourly and canceled check(s) to document payment to subcontractors were not appended—the 52–page filing is sufficiently comprehensive to warrant an evidentiary hearing. The trustee's argument to the contrary is either disingenuous or hopelessly myopic.

14. Even if the court had only the trustee's objection before it, it *could* have held a hearing in the absence of a written response. *See Beard v. United States Trustee*, 188 B.R. 220, 222–23 (W.D.La.1995). *See* MLBR 9013–1(e) & (f), *supra* note 6.

15. Recall, the trustee's amended objection to NMA's claim conceded that NMA indisputably was entitled to a substantial portion of its secured claim.

hearing notice was not for want of "good faith." *Pioneer Inv. Servs.*, 507 U.S. at 395, 113 S.Ct. 1489; *Larson*, 827 F.2d at 919. Its silence in the face of the hearing notice's response deadline was completely understandable. The trustee's assertion that NMA has exhibited only "casual compliance" with court orders is not borne out by the record. Rather than reflecting "a complete lack of diligence," *Larson*, 827 F.2d at 919, NMA's "default" "resulted despite counsel's substantial good faith efforts towards compliance." *Id.* Its explanation is hardly "an easily manufactured excuse incapable of verification by the court." *Id.*[16]

### Conclusion

Although our excusable neglect inquiry has focused on NMA's conduct, it leads us to conclude that the bankruptcy court abused its discretion. This is so because it entered its order sustaining the trustee's objection and disallowing NMA's claim in the context of conflicting instructions and without close attention to the dispute's history.

The December 2, 1997, order sustaining the trustee's objection and disallowing NMA's claim is VACATED. We REMAND for further proceedings consistent with this opinion.

---

16. Our conclusion accords with those reached in similar cases. *In re Leroux* involved three creditors seeking reconsideration of orders sustaining objections to their claims after they failed to respond to the objections or appear at trial. The creditors' lack of response was attributed to a prior order entered by the court at the behest of the debtor suspending further proceedings on the debtor's first objection to their claims. A month after the suspension order entered the debtor filed an amended objection to their claims. The creditors acknowledged receipt of the amended objection, but attributed their failure to respond to their understanding that the suspension order remained in effect. *See In re Leroux*, 216 B.R. at 461–62. Applying an excusable neglect standard, the bankruptcy court granted the creditors motion for reconsideration. *See id.* at 465.

*In re Nunez* also bears a relationship to our case. There the debtor moved to avoid a creditor's judgment lien. The creditor did not respond. Before the court acted, the debtor filed a

second motion, expressly intended to supercede the first. To this motion the creditor timely objected. The debtor asked the court to grant him relief because the creditor had failed to comply with instructions (set forth in notices accompanying the motions) for requesting a hearing. The creditor (belatedly) requested a hearing. The court granted the debtor relief without a hearing and refused to reconsider its order. *See* 196 B.R. at 152–55. The Bankruptcy Appellate Panel reversed. Noting that the bankruptcy court enjoyed "broad discretion to apply its local rules strictly or to overlook any transgressions," *id.* at 157, the panel agreed with the creditor that the local rules were ambiguous as to which party had the responsibility to set a hearing. *See id.* at 158–59. Applying an excusable neglect standard, the panel determined that the creditor's procedural default was excusable and that the court's failure to hold hearings on the merits was an abuse of discretion. *See id.*