Virgen P. Mercado ALVAREZ, a/k/a
Virgen Mercado Alvarez, a/k/a Virgen
P. Mercado, a/k/a Virgen Mercado,
Debtor.

RNPM, LLC, by and through
Operating Partners Co.,
Inc., Appellant,

v.

Virgen P. Mercado Alvarez, Appellee.

BAP No. 11–080.
Bankruptcy No. 10–07374–ESL.

United States Bankruptcy Appellate Panel
for the First Circuit.

June 28, 2012.

Jose M. Prieto Carballo, Esq., on brief for Appellee.

Before BOROFF, DEASY, and BAILEY, United States Bankruptcy Appellate Panel Judges.

BAILEY, Bankruptcy Judge.

RNPM, LLC, by and through Operating Partners Co., LLC ("RNPM"), appeals from the bankruptcy court's order reducing its claim for attorney's fees imposed under its mortgage's "penalty clause," as that term is used in Puerto Rico law, against the debtor, Virgen P. Mercado Alvarez ("the Debtor"), on account of her default under the terms of the Note, defined below. For the reasons set forth below, the Panel **AFFIRMS.**

## *BACKGROUND*

On November 7, 2003, the Debtor executed a note in favor of R & G Mortgage Corporation ("R & G") in the original principal amount of $76,000.00 ("the Note"), which Note was secured by a first mortgage ("the Mortgage") on her residence located in Ceiba, Puerto Rico. Thereafter, R & G assigned the Note and Mortgage to RNPM. The Mortgage expressly provided that, in addition to the Note, it secured:

> an amount of ten percent of the original principal amount of the Note to cover costs, expenses and attorney's fees in the event the holder of the Note is required to foreclose this Mortgage or seek judicial collection, or collection in any proceeding in bankruptcy of the Borrower, which amount shall be considered liquid and payable by the sole act of filing the complaint and shall be in addition to the principal amount of the Note....

Charles P. Gilmore, Esq., and Lucas A. Córdova–Ayusa, Esq., on brief for Appellant.

("the Penalty Clause").

The Debtor eventually defaulted in her obligation to make monthly payments un-

der the Note. On account of this default, RNPM filed a complaint to foreclose the Mortgage ("the Complaint") in November 2009. According to RNPM, the Debtor owed a principal balance of $70,450.65 pursuant to the Note at the time the Complaint was filed.

On August 13, 2010, the Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code,[1] together with her schedules and chapter 13 plan ("the Plan"). On the schedule of secured claims that she filed with her petition, the Debtor listed Operating Partners, Inc. as the holder of a secured claim in the amount of $79,000.00. In the Plan, the Debtor proposed to cure the Mortgage arrearage through the Plan and to maintain regular payments to RNPM.[2] On September 15, 2010, RNPM filed a proof of secured claim in the amount of $77,589.67. On September 27, 2010, RNPM filed another proof of secured claim ("the Claim"), this time in the amount of $7,600.00, which, according to RNPM, represented attorney's fees due under the Note. On the same date, RNPM also filed an objection to confirmation of the Plan ("the Confirmation Objection").

On October 5, 2010, the Debtor filed an objection to the Claim ("the Claim Objection"), asserting that the amount of attorney's fees claimed therein was excessive and unwarranted by the mere filing of the Complaint. She also challenged RNPM's failure to "provide a detailed description of services rendered, number of hours worked and hourly rate" to support the Claim, as required by Bankruptcy Rule 2016.[3] Accordingly, the Debtor requested that the court order RNPM to provide evidence of the Claim; alternatively, the Debtor asked the court to disallow the Claim in the event of RNPM's refusal to produce such evidence.

The court conducted a confirmation hearing on October 6, 2010, which it then continued to December 1, 2010. Prior to the continued hearing on confirmation, on November 5, 2010, RNPM filed a response to the Claim Objection ("the Response"), in which it contended: "[U]nder the relevant [M]ortgage agreement, the total amount of $7,600.00 became due and payable upon the filing of the [C]omplaint [ ] and is not subject to a reasonableness determination." RNPM further claimed that the subject attorney's fees "became due and payable pre-petition and constitute[d] an integral component of [the D]ebtor's pre-petition arrearage that must be cured through the [P]lan."

In further defense of the Claim, RNPM asserted numerous arguments in the Response as "affirmative defenses," including *inter alia:* (1) pursuant to § 1322(e), applicable state law and the terms of the under-

---

1. Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§ " refer to Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.,* as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, 119 Stat. 37. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure.

2. The docket reflects that the Plan has not been confirmed. *See Kowalski v. Gagne,* 914 F.2d 299, 305 (1st Cir.1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.").

3. Bankruptcy Rule 2016(a) provides, in pertinent part, that

> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.

Fed. R. Bankr.P. 2016(a).

lying mortgage agreement determine the default cure amount when a chapter 13 plan provides for the curing of a default and the maintenance of payments to a creditor whose claim is secured only by a security interest in real property that is the debtor's principal residence; (2) because § 1322(e) overrides § 506(b), the default cure amount is the same regardless of whether a claim is undersecured or oversecured; (3) § 1322(e) is not limited to interest but is equally applicable to costs, expenses, and attorneys' fees; and (4) the anti-modification provision of § 1322(b)(2) precluded the Debtor from modifying RNPM's rights under the Mortgage.

On November 16, 2010, the bankruptcy court entered an order sustaining the Claim Objection without prejudice to RNPM's ability to file a detailed fee application. Relying on *In re Pan Am. Gen. Hosp., LLC*, 385 B.R. 855, 876 (Bankr. W.D.Tex.2008), the court concluded that "[t]he reasonableness of post-petition fee claims is tested under federal law." The court reasoned:

> The purpose of the [§ ] 506(b) reasonableness requirement is to prevent oversecured creditors from drawing a "blank check" to cover their own expenses incurred at the peril and expense of the estate and other creditors.... This court has generally followed and applied the lodestar approach when awarding reasonable fees to professionals.... The only actual services rendered as of this date, other than defending the fee application, are relative to the filing of the proof of claim. There is no evidence that legal services were actually performed. Consequently, as of this date,

there are no reasonable fees to be claimed as part of the secured claim.

Thereafter, on November 23, 2010, RNPM filed a supplemental objection to confirmation of the Plan ("the Supplemental Confirmation Objection"), asserting that the Plan could not be confirmed because it did not provide for payment of the Claim, as required under § 1322(e). RNPM further argued that Bankruptcy Rule 2016 and § 506(b) were "inapposite," and that § 1322(e) required the Debtor to pay attorney's fees in accordance with the terms of the Mortgage. It added that "the [M]ortgage provisions here in question are typically found in mortgage agreements executed in our jurisdiction" and have been upheld by the Supreme Court of Puerto Rico and many other lower courts of Puerto Rico.[4]

RNPM also asserted in the Supplemental Confirmation Objection that the Debtor could reinstate the Mortgage, as an alternative "to chapter 13 cure." In support of this argument, it specifically pointed to language contained in paragraph 19 of the Mortgage, which permitted the Debtor to cure the total arrearage in one lump sum. According to RNPM, "under a contractual mortgage reinstatement scenario, [it] would only be entitled to recover the costs, expenses and attorneys' fees reasonably incurred to enforce the" Mortgage. At the December 1, 2010 continued hearing on confirmation of the Plan, the chapter 13 trustee recommended confirmation, while RNPM re-asserted its objection. The court granted the Debtor 21 days to respond to the Supplemental Confirmation Objection and indicated that it would

---

4. Although RNPM argued both in the proceedings below and on appeal that Puerto Rico lower court decisions have upheld clauses identical to the Penalty Clause in this case, the cases which it cited in support of this proposition are not published in English, and

RNPM has failed to supply translations. *See* 1st Cir. BAP L.R. 8008–1(b) ("The BAP will disregard any document(s) not in the English language unless a translation(s) is furnished.").

thereafter take the matter under advisement.

The Debtor filed a supplemental objection to the Claim on January 11, 2011 ("Supplemental Claim Objection"). In the Supplemental Claim Objection, the Debtor reiterated her request for an order directing RNPM to provide a detailed description of legal services rendered, number of hours worked, and hourly rate; alternatively, the Debtor again sought an order disallowing RNPM's claim should it fail to provide such information. The Debtor also argued:

> Creditors, in their supplemental motion, allege that this Honorable Court has no discretion and has to accept their claim was filed, without taking into consideration that the burden that their position takes on the [D]ebtor. In the particular case, the claim in attorney fees is about the same amount in dollars as the arrears of the [D]ebtor. This position makes it almost impossible for [the] [D]ebtor to retain [her] residential property, MAIN REASON FOR FILING THE BANKRUPTCY CASE.

RNPM filed a response to the Supplemental Claim Objection in which it essentially repeated the substance of its earlier arguments. For example, it again argued that the Bankruptcy Code did not permit the court to modify the rights of holders of claims secured only by a security interest in a residential property that constitutes a debtor's principal residence. Accordingly, RNPM asked the court to overrule the Supplemental Claim Objection. On September 9, 2011, without a hearing, the court entered the Opinion and Order (the "Order") which is the subject of this appeal, ruling as follows:

... [T]he court finds that 11 U.S.C. § 1322(e) is the controlling section for determining the amount of pre-petition mortgage arrearages and that the procedure to determine the reasonableness of attorney's fees pursuant to Fed. R. Bankr.P. 2016 is not applicable in the instant case. This court also finds that pursuant to Article 1108 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3133, there are grounds for equitable intervention regarding the above referenced penal clause and as such finds that the penalty for attorney's fee[s] should be equitably reduced to $2,000.00.

In the Order, the court concluded that: (1) § 1322(e) determines the amount of pre-petition arrearages, including pre-petition attorney's fees; (2) § 506(b)'s reasonableness requirement for curing arrearages was inapplicable in the instant case; (3) Bankruptcy Rule 2016, which governs the procedure for determining the reasonableness of pre-petition fees, was also inapplicable, because the substantive law of Puerto Rico does not employ a reasonableness standard; (4) consistent with *In re Plant,* 288 B.R. 635, 642–44 (Bankr.D.Mass.2003), bankruptcy courts are required to look to state law in order to determine a mortgagee's entitlement to attorney's fees; and (5) Article 1108 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3133,[5] permits the modification of penal clauses in extraordinary circumstances in order to mitigate their onerous consequences. For these reasons, the court sustained the Supplemental Claim Objection and "equitably reduced" the Claim to $2,000.00.

The court further wrote:

After thoroughly reviewing the totality of the circumstances in the instant case, this court finds that there are grounds

---

**5.** References to "31 L.P.R.A. §§ 3131–3134" are to P.R. Laws Ann. Tit. 31, §§ 3131–3134 (2009).

for equitable intervention pursuant to Article 1108 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3133. The Debtor has partly fulfilled her mortgage payment obligations under the [ ][N]ote since January 2004, and she ... intends to cure the [M]ortgage arrears ... and continue making her monthly mortgage payments through her Chapter 13 plan. The court is aware that at the time of Debtor's bankruptcy petition filing she had not made any mortgage payments to RNPM for over a year. [The Plan] details $6,400 of arrears to Operating Partners (Docket No. 2) and Debtor's Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Form B22C) lists monthly mortgage payments of $491 (Docket No. 1). In the instant case, RNPM's collection action in state court proceeded up to the point of the filing of the complaint by RNPM.

This court finds that the penalty of $7,600.00 for attorney's fees in a case which proceeded only up to the point of the filing of the complaint by RNPM lacks proportion to the circumstances present in the instant case, wherein an individual intends to cure the mortgage payment arrears and continue making the monthly mortgage payments through a chapter 13 plan. Moreover, this court finds that the imposition of the $7,600 penalty for attorney's fees for initiating a collection of monies action would result [in] inequitable unfair consequences, namely the creditor's attorney getting a windfall at the expense of the unsecured debtors [sic] and negating the honest but unfortunate debtor its fresh start. Thus, this court modifies

the penalty for attorney's fee[s,] [which] should be equitably reduced to $2,000.00.

On October 7, 2011, RNPM filed a Notice of Appeal.[6] RNPM identified three issues on appeal:

A. Whether the [b]ankruptcy [c]ourt weighed the appropriate factors under state law before it determined that a downward modification of the amount set out as due as contained in the [M]ortgage [ ] was warranted.

B. Whether the [b]ankruptcy [c]ourt committed an error of law by disregarding Puerto Rico law which dictates that the compensation arising from the infringement of a penal cause should both provide compensation to the affected party for actual loss *and* serve to dissuade breach of the contractual agreement.

C. Whether the [b]ankruptcy [c]ourt committed an error of law and/or abused its discretion when it failed to delineate the factors it took in[to] consideration as required by controlling state law when reducing the amount due under the penal clause and whether the [c]ourt properly weighed those factors [in] reaching its decision.

(emphasis in the original).

### JURISDICTION

 A bankruptcy appellate panel is "duty-bound" to determine its jurisdiction before proceeding to the merits, even if not raised by the litigants. *Boylan v. George E. Bumpus, Jr. Constr. Co., Inc. (In re George E. Bumpus, Jr. Constr. Co., Inc.)*, 226 B.R. 724, 725–26 (1st Cir. BAP 1998). The bankruptcy appellate panel has jurisdiction to hear appeals from "final judgments, orders, and decrees" pursuant to 28 U.S.C. § 158(a)(1), "or with leave of

---

**6.** On September 15, 2011, RNPM filed a motion to extend the time for filing an appeal by 21 days, which the bankruptcy court granted the following day. Accordingly, we may consider this appeal timely.

the court, from interlocutory orders and decrees" pursuant to 28 U.S.C. § 158(a)(3). *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998) (internal quotations omitted). An order on an objection to claim is a final order. *See Neal Mitchell Assocs. v. Braunstein (In re Lambeth Corp.)*, 227 B.R. 1, 6 (1st Cir. BAP 1998); *see also Miller v. Miller (In re Miller)*, 284 B.R. 734, 736 (10th Cir. BAP 2002) (holding that "order disposing of an objection to a claim is a final order"). Although the Order arose in the context of a hearing on confirmation of the Plan, it effectively sustained the Debtor's Supplemental Claim Objection. Thus, we are satisfied that the Order is final and that we have jurisdiction to hear this appeal.

## STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *See Lessard v. Wilton–Lyndeborough Coop. School Dist.*, 592 F.3d 267, 269 (1st Cir.2010). The Panel reviews an order disallowing a claim for abuse of discretion, particularly where, as here, the disallowance involved "an exercise of the court's general equitable powers." *In re Lambeth Corp.*, 227 B.R. at 6. An abuse of discretion occurs when the court "ignored a material factor deserving significant weight, relied upon an improper factor, or made a serious mistake in weighing proper factors." *Id.* at 7 (internal quotations and citations omitted).

## POSITIONS OF THE PARTIES

On appeal, RNPM concedes that the Puerto Rico Civil Code grants the bankruptcy court discretion to modify penal clauses which it determines to be excessive. It argues that in exercising its discretion in this case, however, the bank-ruptcy court failed to: (1) consider the "compensatory" and "dissuasive" functions of penalty clauses; (2) recognize that penalty clauses similar to the one in this case are the "industry standard" in Puerto Rico and have been upheld by the Supreme Court of Puerto Rico; (3) justify the amount of the reduction in light of the Debtor's failure to pay the Mortgage for over a year; and (4) recognize that the attorney's fees were not a payment to creditor's counsel but, rather, a payment to the creditor itself. Moreover, RNPM contends that the amount of the sanction imposed by the Penalty Clause in this case appropriately reflects that "legal proceedings are usually long and the costs associated with them are unpredictable."

The Debtor counters that the bankruptcy court properly exercised its discretion to equitably modify the Penalty Clause after consideration of the totality of circumstances, including her financial condition. She also argues that, contrary to RNPM's assertion, the bankruptcy court sufficiently elaborated its concerns and the applicable law in the Order. In support of her argument for mitigation of the effect of the Penalty Clause, she emphasized the onerousness of its consequences, stating:

In the present case, the application of the [Penalty] [C]lause will have [a] devastating effect on the [D]ebtor, since the [D]ebtor will have to amend the [Plan] in the chapter 13 in order to make a provision to pay the $7,600.00 of the [Penalty] [C]lause, which will increase the payment plan in an additional $150.00 a month basis. This additional $150.00 will be really hard on the [D]ebtor['s] income, making it almost impossible on the [D]ebtor to retain its property.

## DISCUSSION

The essential facts underlying this appeal are not in dispute. The parties agree

that the Mortgage provision in issue constitutes a "penal clause" within the meaning of Puerto Rico law. They also agree that § 1322(e) controls the determination of the amount of pre-petition attorney's fees which may be included in a secured creditor's mortgage arrearage claim. Thus, the only issue facing the Panel is whether the bankruptcy court abused its discretion when it reduced RNPM's claim for attorney's fees by the sum of $5,600.00.

## I. Applicable Standards

### A. State Law and the Determination of Attorney's Fees

■ Section 1322(e) provides that

Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

11 U.S.C. § 1322(e). Accordingly, a Massachusetts bankruptcy court ruled that:

For agreements signed after [the] section's effective date [of October 22, 1994], . . . interest and other charges on arrearages cured through a Chapter 13 plan are allowed only if they are (1) required under the original agreement and (2) not prohibited by state law.

*In re Plant*, 288 B.R. at 642 (citing *In re Landrum*, 267 B.R. 577, 580 (Bankr. S.D.Ohio 2001); *In re Lake*, 245 B.R. 282, 285 (Bankr.N.D.Ohio 2000)). Other courts agree that § 1322(e) permits recovery of attorney's fees and expenses only if allowed by applicable nonbankruptcy law. *See, e.g., In re Gagne*, 378 B.R. 439, 443 (Bankr.D.N.H.2007) (holding when debtor

seeks to cure pre-petition default or arrearage on long-term debt through chapter 13 plan, amount of arrearage to be cured is determined by § 1322(e), which in turn requires courts to look to agreement and state law); *In re Gordon–Brown*, 340 B.R. 751, 757 (Bankr.E.D.Pa.2006) (holding state law governs allowance of attorney's fees for pre-petition services in a proof of claim for mortgage arrears for mortgage transactions after October 22, 1994). In view of the foregoing authority, we conclude that the bankruptcy judge was correct in determining that the law of Puerto Rico controls the enforceability of the Penalty Clause.

### B. Penal Clauses in Puerto Rico

■ The Civil Code of Puerto Rico specifically permits the use of penal clauses in 31 L.P.R.A. § 3131, which states:

In obligations with a penal clause the penalty shall substitute indemnity for damages and the payment of interest in case of nonfulfillments, should there be no agreement to the contrary.

This penalty can only be enforced when it is demandable in accordance with the provisions of this title.

31 L.P.R.A. § 3131.[7] Thus, under the law of Puerto Rico, "it is possible to agree upon obligations with penal clauses." *Rochester Capital Leasing Corp.*, 3 P.R. Offic. Trans. at 227. The validity of the penal clause depends on the validity "of the principal obligation." 31 L.P.R.A. § 3134; *see also Rochester Capital Leasing Corp.*, 3 P.R. Offic. Trans. at 234.

The Puerto Rico Civil Code does not specify what constitutes a "penal clause." *Rochester Capital Leasing Corp.*, 3 P.R. Offic. Trans. at 234. The Supreme Court

---

**7.** This provision is "equivalent to articles 1152 to 1155 of the Spanish Civil Code." *Rochester Capital Leasing Corp. v. Williams*

*Int'l Ltd.*, 3 P.R. Offic. Trans. 226, 233 (P.R. 1974).

of Puerto Rico has stated, however, that the "function" and "impact" of a particular clause supersede the language employed in the determination of whether the clause is penal in nature. *Id.*

" '[T]he two most important functions of a penalty clause are to guarantee the performance of an obligation ... and ... to evaluate in advance the damages which may be caused to the creditor by the improper nonperformance of the obligation....' " *Id.* (citations omitted); *see also Consol. Mortgage & Fin. Corp. v. Cooley*, 3 P.R. Offic. Trans. 9, 14 (P.R. 1974) (stating purpose of penal clause is to relieve creditor from proving damages). Thus, a "penal clause is not aimed to repair the damages suffered by the creditor but in addition it fulfills a coercive and punitive purpose." *Rochester Capital Leasing Corp.*, 3 P.R. Offic. Trans. at 226. The punitive portion of damages imposed under a penal clause

> acts ... as a pressure on the debtor to impel him to the specific performance of the obligation before the threat of having to pay an indemnity which would exceed the pecuniary equivalent of the obligation to which he is bound.

*Id.* (citation omitted).

## C. Modification of Penal Clauses under Puerto Rico Law

■ "Precisely because of" their coercive and punitive purpose, penal clauses in Puerto Rico are "subject to the principle of moderation" under Puerto Rico law. *Id.* at 234. "As a remedy in equity against the strictness or the excessive burden of the penal clause, the Civil Code [of Puerto Rico] provides for the mitigation of the penalty" in 31 L.P.R.A. § 3133. *Jack's Beach Resort, Inc. v. Compania De Turismo De Puerto Rico*, 12 P.R. Offic. Trans. 430, 437 (P.R.1982). That statute provides:

> The court o[r] judge shall equitably modify the penalty if the principal obligation should have been partly or irregularly fulfilled by the debtor.

31 L.P.R.A. § 3133. As stated by the Supreme Court of Puerto Rico, "[t]his is one of the rare cases where the [Civil] Code [of Puerto Rico] incorporates equity into positive law...." *Jack's Beach Resort, Inc.*, 12 P.R. Offic. Trans. at 437. The Supreme Court of Puerto Rico warned, however, that:

> The [judicial] power of mitigation should be used only with great caution and notorious justification.... The result of curbing the absolute preeminence of the autonomy of the will, either mitigating the effects of the contracts or limiting their obligatoriness according to rules of good faith, must be arrived at only in extraordinary circumstances as a means of mitigating its excessive onerousness for the obligee, or the alarming lack of proportion.

*Id.* at 438 (citation omitted).

Thus, in *Jack's Beach Resort, Inc.*, the Supreme Court of Puerto Rico determined that moderation of the penal clause was warranted because "[t]he conditions of oppression, lack of proportion in the penalty, and its extremely unfair consequences [were] present...." *Id.* at 439. In *Jack's Beach Resort, Inc.*, the subject mortgage secured a $3,200,000.00 indebtedness and provided for acceleration in the event of a default in a single monthly installment, plus an assessment of costs, expenses, and attorney's fees in the amount of $320,-000.00—i.e., the equivalent of 10 percent of ·the principal. Upon the mortgagor's default, the mortgagee commenced an action for foreclosure of the mortgage, claiming an unpaid principal balance in excess of $3,000,000.00, interest at the rate of 8 percent annually, and the sum of $320,000.00 for attorney's fees. The lower court en-

tered judgment in favor of the mortgagee, granting the total amount claimed, including attorney's fees. On appeal, the Supreme Court of Puerto Rico refused to enforce either the acceleration clause or the $320,000.00 penalty. Instead, the court allowed the debtor "a term to bring its payments up to date," and reduced the penalty to $10,000.00. *Id.* at 440. The court reasoned:

> With regard to the $320,000 for attorney's fees agreed upon, which are also part of the penal design to press and oblige the debtor to pay under penalty of serious economic damage, its mitigation should not be taken to the point of a *quantum meruit* fixing, because then it would not be a modification, but the abolition of the agreement. It should be geared to an adjustment that, without eliminating the penal nature of the clause, reduces the penalty to make it proportional to the degree of fault and the magnitude of the harm caused. In the peculiar circumstances of the case before us, the penalty in the area of attorney's fees should be equitably reduced to ten thousand dollars ($10,000). In view of the foregoing, *the petition for review is granted and the judgment appealed is reversed, with a 30–day term within which the defendant ... shall bring its payments up to date; and also pay its creditor ... a $10, 000 penalty for costs, expenses, and attorney's fees.*

*Id.* at 440–41 (emphasis in original).

In *Rochester Capital Leasing Corp.,* the matter at issue was the enforceability of a penalty clause in an equipment lease that imposed fees and costs equal to 15 percent of the amount due under the contract (or $3,452.79). The Supreme Court of Puerto Rico upheld the trial court's refusal to moderate the ostensibly harsh penal clause on the grounds that the defendant lessee failed to establish that the resulting penal-

ty caused it harm. Explaining its rationale for affirming the trial court's imposition of the penalty in the full amount, the Supreme Court of Puerto Rico stated:

> In the case at bar the Superior Court was not placed in condition of estimating the proper degree of moderation of the penalty and it correctly did not attenuate it. It does not appear of record whether or not the collator [sic] was sold and for how much. The difference if any, between the selling price, if the sale was carried out, and the value which the property would have had at the end of the agreed lease term is unknown. It is known that the machine was worth $4,650 at the moment of its lease, and that in Puerto Rico an offer was received for only two hundred dollars for it after lessee's breach of contract. *Lessee did not offer evidence, at the trial, of the damages which the lessor's actions may have caused to it. Neither did it explore whether lessor received an excessive profit or establish, as was its obligation, the grounds to request the moderation of the penalty.* Under such circumstances, there is no basis in [the] record to disturb the judgment.

*Rochester Capital Leasing Corp.,* 3 P.R. Offic. Trans. at 236 (emphasis added).

In *Rochester Capital Leasing Corp.,* the Supreme Court of Puerto Rico acknowledged that trial courts have wide latitude when applying the "doctrine of [ ] moderation of the penalty." It cautioned, however, that:

> ... [T]he moderation of the penalty should not reach the point of requiring from the creditor to return that received in excess of the damage suffered ..., but in certain situations the penalty can be reduced to a very little bit more than that basis.

*Id.* at 237.

After *Jack's Beach Resort, Inc.* and *Rochester Capital Leasing Corp.,* the Su-

preme Court of Puerto Rico again, in *Levitt & Sons of P.R., Inc. v. D.A.C.O.*, 5 P.R. Offic. Trans. 248 (P.R.1976), emphasized the need for courts to consider the proportionality of harms when determining whether to enforce a contract's penal clause. There, the defendant defaulted on its contractual obligation to purchase a house. The underlying contract provided for the seller's retention of the buyer's $500.00 deposit (the equivalent of 2 percent of the $29,780.00 purchase price) as a penalty for such breach.[8] The trial court upheld an administrative decision of the Department of Consumer Affairs, ordering the seller to return all but $10.00 of the deposit. On appeal, the Supreme Court of Puerto Rico reversed the decision of the trial court, concluding that

> [The] mitigating judicial function does not come into play in the instant case since the penalty (2% of $29,780) keeps a just proportion with the foreseeable damages caused by the nonfulfillment, without imposing a punitive onerous burden.

*Id.* at 261.

## II. Analysis

■ From the foregoing, it is clear that in Puerto Rico, a court's discretion to modify penal clauses is broad but not unfettered. In reviewing a court's exercise of this discretion, the Supreme Court of Puerto Rico strives to strike a balance between the punitive and remunerative functions of penal clauses. Courts have placed the burden of demonstrating lack of proportion between the breach and the penalty on the debtor. In the instant case, the Debtor demonstrated that the $7,600.00 penalty imposed under the Mortgage exceeded the $6,400.00 Mortgage arrearage. Thus, she effectively established a lack of proportion between the penalty and the default of the sort frowned upon by Puerto Rico courts. She also argued that if upheld, a penalty of this magnitude would jeopardize her chances of success in chapter 13, thereby satisfying the element of onerousness required to justify moderation of a penal clause.

■ Furthermore, contrary to RNPM's assertion, the record also indicates that the bankruptcy court made detailed findings, sufficient to satisfy the requirement of "notorious justification" established by the Supreme Court in *Jack's Beach Resort, Inc.* Specifically, the court found that the Debtor had partly fulfilled her obligations under the Note since January 2004, and that although she had not made any payments to RNPM for over a year, the Debtor intended to cure the arrearage through the Plan.

The record further reveals that the bankruptcy court considered the Debtor's financial condition and the potential impact of the Penalty Clause when it adjusted the amount of the penalty. It is clear from the Order that the bankruptcy judge weighed the Debtor's Statement of Currently Monthly Income and Calculation of Commitment Period and Disposable Income against the extent of RNPM's collection efforts. As the court observed, those efforts merely "proceeded up to the point of the filing of the [C]omplaint." The court further noted that the Plan contemplated curing the Mortgage arrearage and monthly mortgage payments in the amount of $491.00. In this manner, the court endeavored to strike the necessary balance

---

8. The penalty in *Levitt & Sons of P.R., Inc.* was incorporated in the subject contract pursuant to the terms of a Puerto Rico statute providing for the liquidation of damages in certain purchase and sale contracts. *See Levitt & Sons of P.R., Inc.*, 5 P.R. Offic. Trans. at 262 n. 6.

between the penalty and the magnitude of harm to RNPM, as required by the law of Puerto Rico. While the court did not specify a formula or otherwise indicate how it arrived, mathematically, at a reduction equal to $5,600.00, the case law does not require this level of precision or specificity in the exercise of a court's discretion. Indeed, the overarching principles articulated in the line of cases highlighted by *Jack's Beach Resort, Inc., Rochester Leasing Corp.*, and *Levitt & Sons of P.R., Inc.* are balance and fairness, and no formulaic approach to penalty reductions is prescribed. Thus, based on the controlling principles enunciated by the Supreme Court of Puerto Rico, RNPM's argument that the bankruptcy court failed to take into account lending industry standards or to substantiate the amount of its reduction is unpersuasive.[9] Consequently, we conclude that the bankruptcy court did not abuse its discretion when it reduced the Claim from $7,600.00 to $2,000.00.

## CONCLUSION

The bankruptcy court properly exercised its discretion when it reduced the attorney's fees due from the Debtor to RNPM under the Penalty Clause. Accordingly, the Order is **AFFIRMED**.

---

9. Because we conclude that the bankruptcy court properly weighed the onerous consequences of the Penalty Clause on the Debtor against the prospect of harm to RNPM, the court's passing reference to any impact of the Penalty Clause upon RNPM's counsel does not alter our conclusion. Moreover, the parties do not dispute that any sums due pursuant to the Claim will be paid to RNPM, directly, rather than to RNPM's counsel.