**In re David Earl VAN DYKE, Debtor.**

**No. 88–81521.**

United States Bankruptcy Court, C.D. Illinois.

July 24, 2001.

Donald R. Alvarez, Phoenix, AZ, Bret S. Babcock, Bruce R. Becker, Peoria, IL, John Joseph Brunsman, Springfield, IL, Karen A. Cincione, Columbus, OH, David J. Cook, San Francisco, CA, Andrew W. Covey, David B. Daley, Peoria, IL, David D. Dodge, Phoenix, AZ, Rebecca R. Driggs, Phoenix, AZ, Gregg N. Grimsley, Diana M. Jagiella, Peoria, IL, Donald G. Kendall, Bakersfield, CA, Stephen A. Kouri, Peoria, IL, James A. Lewis, John H. Long, Springfield, IL, Peter C. McKittrick, Portland, OR, Jeffrey B. Rock, Peoria, IL, Paul D. Supton, San Francisco, CA, G. Michael Tryon, Phoenix, AZ, Robert Weinberger, San Francisco, CA, for creditor.

Gary T. Rafool, Peoria, IL, for debtor.

## OPINION

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

Before the Court is the application of the Liquidating Agent (LIQUIDATING AGENT) for approval of an interim distribution and disallowance of various claims and the objection filed thereto by DENTON SERVICE CORPORATION (DENTON).

The Debtor, DAVID EARL VAN DYKE (DEBTOR), an entrepreneur claiming to have an interest in at least forty-eight different corporations, limited partnerships or similar business entities in addition to several unincorporated real estate and miscellaneous business ventures, filed a Chapter 11 petition on August 2, 1988. As set forth in the original petition, total assets of the estate exceed twelve million dollars and total claims exceed sixteen million dollars. In his schedule of secured creditors, the DEBTOR listed Denton Service Corp. (DENTON) as having two secured claims, as follows:

| | Security | Date Incurred | Market Value | Amount of Debt (est) |
|---|---|---|---|---|
| Denton Service Corp. 2333 N. Tucson Blvd. Tucson, AZ 85716 | 2d Deed of Trust El Corral | 1986 | $1,800,000.00 | $ 300,000.00 |
| Denton Service Corp. 2333 N. Tucson Blvd. Tucson, AZ 85716 | 3 Units Ina & Silverbell Partnership | 1987 | $ 100,000.00 | $ 17,000.00 |

It is only the first-listed claim that is in dispute here.

The DEBTOR filed a plan and disclosure statement on March 3, 1989. According to the disclosure statement, the El Corral Lodge was a supervisory care unit in Tucson which was owned by one of the DEBTOR'S corporations, Grandview Manor,[1] whose ownership had been taken over by DENTON, which held deeds in trust against the facility for an indebtedness approximating $1.2 million. The DEBTOR did not consider the El Corral Lodge to have any present asset value to the estate. The plan provided the following treatment with respect to DENTON'S claim:

*Treatment of Class VI Claimholders*—Class VI claimholders will be dealt with as follows:

A. Denton Service Corporation of Tucson, Arizona, which is owed approximately $1,200,000.00 by Debtor and/or Grandview Manor, Inc., and which is secured with deed(s) in trust in El Corral Supervisory Care Unit of Tucson, Arizona, valued at approximately $1,500,000.00, and Debtor and/or his entity known as Grandview Manor, Inc. will sell said security within 180 days of the effective date of his Plan of Reorganization and pay said claimholder in full, with any remainder of said sale price to be paid by Debtor pro rata toward the payment of his Class II and/or III claimholders with any remaining balance therefrom to be paid first to

---

1. According to the disclosure statement, the DEBTOR was the majority shareholder of Grandview Manor, the remainder of its stock being owned by Leisure Gardens, Inc., a corporation wholly owned by the DEBTOR.

Debtor's Class V claimholder, and then to his Class IX claimholder as hereinafter provided. If said property has not sold within said 180 days, then Debtor will convey his and/or said Grandview Manor, Inc.'s interest in said security to said claimholder in full satisfaction of any and all debt owed said claimholder by Debtor.

The plan, as modified by a stipulation between the DEBTOR and the Unsecured Creditors' Committee providing for the appointment of a Liquidating Agent to administer the plan and see to the orderly liquidation of the remaining property of the estate, was confirmed by entry of an order on September 4, 1990, which provided that the order would become final unless an objection was filed thereto within twenty days. On Sept. 24, 1990, DENTON filed an objection to the confirmation order, alleging that it held an unsecured claim in the amount of $350,000, by reason of a Trustee's sale of the property. A hearing was held on Oct. 29, 1990, at which time DENTON failed to appear and an order was entered on Nov. 6, 1990, finding DENTON'S objection to be without merit and denying it.

On Dec. 3, 1990, the LIQUIDATING AGENT filed an objection to numerous claims, including DENTON'S, acknowledging the validity of DENTON'S claim but asserting that the amount was erroneous. The court file reflects that notice of the objection was sent to DENTON on Dec. 21, 1990, providing that if no response was filed to the objection within twenty days, an order would be entered allowing the objection. An order was entered on April 14, 1991, sustaining the LIQUIDATING AGENT'S objection to DENTON'S claim, based on its failure to file a response.

The LIQUIDATING AGENT continued to administer the assets, receive distributions from Van Dyke Oil, Inc, and to resolve certain tax issues. On Dec. 8, 2000, the LIQUIDATING AGENT filed an application for approval of a partial distribution of assets of the estate and for disallowance of various claims. DENTON objected to the proposed distribution, alleging that subsequent to the entry of the order denying its claim, which it asserts it did not receive, it had numerous contacts with the LIQUIDATING AGENT and his attorney and that no mention was ever made of the disallowance of its claim. A hearing was held on the application and an order was entered on March 1, 2001, directing the LIQUIDATING AGENT to hold the pro rata portion of the proposed interim distribution to be made to DENTON, pending this Court's resolution of the allowance or disallowance of its claim.

■ In Chapter 11 cases, claims such as DENTON'S, which are not scheduled by the debtor as disputed, contingent, or unliquidated, are "deemed filed under section 501" so that it is not necessary for the scheduled creditor to file a proof of claim. 11 U.S.C. § 1111(a). Though DENTON has not couched its request for relief as such, what it actually is seeking here is reconsideration of the disallowance of its claim, which is specifically provided for by the Bankruptcy Code. 11 U.S.C. § 502(j). Section 502(j) provides, in pertinent part:

A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. . . .

Though the standard to be applied in determining whether to reconsider a claim is

subject to some disagreement,[2] among the factors to be considered by the court are: (1) the extent and reasonableness of the party's delay in seeking reconsideration postconfirmation; (2) the prejudice to any party; (3) the effect of the delay upon court administration and (4) the movant's good faith. *In re Gomez,* 250 B.R. 397 (Bankr.M.D.Fla.1999).

■ In the present case, consideration of these factors, along with the due process concerns raised by DENTON, leads this Court to conclude that DENTON'S objection to the proposed distribution should be sustained and that its claim is entitled to reconsideration. With respect to the first factor, the extraordinary length of the delay is tempered by DENTON'S continued contact with the LIQUIDATING AGENT and his attorney during this period. The second factor, prejudice to any party, weighs in DENTON'S favor. The LIQUIDATING AGENT has not alleged any prejudice and this Court can discern none. Regarding the third factor, the LIQUIDATING AGENT, in his proposed distribution, objected to other claims, evidencing that the claims allowance/disallowance process is not yet completed. As to the last factor, there is no evidence of a lack of good faith on DENTON'S part.

The deciding factor for this Court, however, involves DENTON'S assertion that it never received notice of the LIQUIDATING AGENT'S objection to its claim or the order entered by the Court disallowing its claim. As previously noted, the address listed for DENTON on the bankruptcy schedules was "2333 N. Tucson Blvd." and that was the address used during the early stage of the proceedings, including confirmation. This address was correct, as shown by DENTON'S letter dated Sept. 24, 1990, enclosing its objection to the confirmation order. The Court files disclose that notice of the LIQUIDATING AGENT'S objection to DENTON'S claim and the order sustaining that objection were erroneously sent to DENTON at "333 N. Tucson Blvd." Given this discrepancy in the address, it is entirely possible, in fact, it is more probable than not, that DENTON did not receive these documents.[3] Given this Court's analysis under § 502(j) governing reconsideration of DENTON'S claim, there can be little doubt that DENTON'S objection to the distribution proposed by the LIQUIDATING AGENT is well taken and that DENTON is entitled to reconsideration of its claim.

This Opinion constitutes this Court's findings of fact and conclusions of law in

---

**2.** *See, In re Lambeth Corp.,* 227 B.R. 1 (1st Cir. BAP 1998), n. 11 at p. 7.

**3.** Don Denton, a representative of Denton Service Corporation, was listed as an unsecured creditor on the original bankruptcy schedules and, presumably, because his name continues to appear on the matrix, would have received notices throughout these proceedings which were mailed to all creditors. He would not have received, however, notice of the objection to DENTON'S claim nor the order entered disallowing DENTON'S claim, as those documents were only sent to interested parties.

On February 14, 2001, DENTON filed a document captioned "Affidavit in Support of Objection to Proposed Distributions" but Donald Denton's affidavit was not attached. This Court notes that Denton Service Corporation is not currently listed on the mailing matrix. After notice and order of the Court, certain creditors, including DENTON, were removed from the matrix because their mail was being returned as undeliverable. It is the creditor's responsibility to keep the Court advised of its current address.

accordance with Federal Rule of Bankruptcy Procedure 7052.