**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT
———————————————————

**BAP NO. EP 20-001**
———————————————————

**Bankruptcy Case No. 17-20316-MAF**
**Adversary Proceeding No. 17-02065-MAF**
———————————————————

**KITTERY POINT PARTNERS, LLC,**
**Debtor.**
———————————————————

**KITTERY POINT PARTNERS, LLC,**
**Plaintiff-Appellant,**

**v.**

**BAYVIEW LOAN SERVICING, LLC,**
**Defendant-Appellee.**
——————————————————————————————————

**BAP NO. EP 20-005**
———————————————————

**Bankruptcy Case No. 17-20316-MAF**
———————————————————

**KITTERY POINT PARTNERS, LLC,**
**Debtor.**
———————————————————

**KITTERY POINT PARTNERS, LLC,**
**Appellant,**

**v.**

**BAYVIEW LOAN SERVICING, LLC,**
**Appellee.**
———————————————————

_____

**Appeals from the United States Bankruptcy Court
for the District of Maine
(Hon. Michael A. Fagone, U.S. Bankruptcy Judge)**
_____

**Before
Godoy, Cabán, and Finkle,
United States Bankruptcy Appellate Panel Judges.**

_____

**George J. Marcus, Esq., and David C. Johnson, Esq., on brief for Appellant.
Andrew W. Sparks, Esq., and Adam R. Prescott, Esq., on brief for Appellee.**

_____

**January 14, 2021**
_____

**Finkle, U.S. Bankruptcy Appellate Panel Judge.**

The chapter 11 debtor, Kittery Point Partners, LLC ("KPP"), appeals from: (1) the order entered in the main bankruptcy case overruling its objection to the proof of claim filed by Bayview Loan Servicing, LLP ("Bayview"); and (2) the judgment entered in favor of Bayview in a related adversary proceeding in which KPP sought to have the underlying note and mortgage declared invalid and Bayview's claim disallowed.[1] The crux of KPP's argument before the bankruptcy court was that the note and mortgage were unenforceable due to a lack or failure of consideration. The court concluded, however, that KPP was barred from challenging the validity of the note and mortgage by: (1) a repayment agreement in which KPP explicitly acknowledged the validity of the note, mortgage, and debt, and released all claims against Bayview; and (2) the preclusive effect of a final state court judgment upholding the validity of the note and mortgage.

For the reasons discussed below, we **AFFIRM** both the order and judgment of the bankruptcy court.

## BACKGROUND

I.    **Pre-Bankruptcy Events**

A.    **The Creation of KPP**

James Austin formerly owned property located in Kittery, Maine (the "Property"), which was subject to a first mortgage held by Wells Fargo Bank, N.A. ("Wells Fargo") securing a $550,000 note. On May 26, 2005, Mr. Austin transferred the Property by a quitclaim deed to KPP. KPP was formed on April 21, 2005 by Todd Enright, a financial advisor to Mr. Austin and his wife, for the sole purpose of holding title to the Property. At the time, KPP's only member was Daniel Systo, who was affiliated with Enright.

---

[1] By order dated February 24, 2020, the Panel joined these appeals for briefing and oral argument. This opinion disposes of both appeals.

3

**B.    The Note and Mortgage**

On March 1, 2005, prior to KPP's formation and acquisition of the Property, Systo executed on behalf of KPP a promissory note in the amount of $600,000 (the "Note") in favor of Middlebury Equity Partners ("MEP"), an entity controlled by Enright, and a mortgage on the Property securing that Note (the "Mortgage"). As consideration for the Note and Mortgage, MEP agreed to disburse $550,000 to Wells Fargo to discharge that lender's first mortgage on the Property and $39,835 to KPP. Although the Note provided that KPP's promise to pay was in exchange "for value received," KPP now insists that no funds were ever advanced, and Wells Fargo's first mortgage was never discharged.

In June 2005, Bayview purchased the Note and Mortgage from MEP for approximately $600,000. In connection with the purchase, MEP executed an Assignment of Mortgage in favor of Bayview, the current holder of the Note and Mortgage.

**C.    The Delinquency Repayment Agreement**

KPP eventually defaulted on its obligations under the Note, and Bayview commenced foreclosure proceedings. A default judgment was entered against KPP in November 2008. Around this time, the Austins became members of KPP and Mrs. Austin became a manager.

In February 2009, KPP entered into a Delinquency Repayment Agreement with Bayview (the "DRA"), executed by Mrs. Austin in her capacity as a manager. The DRA contained a "release" provision, in which KPP explicitly acknowledged the validity of the Note, the Mortgage, and its indebtedness to Bayview as follows:

> Borrower [KPP], by his/her signature hereon, agrees to the accuracy of the allegations in this Agreement, as well as to the authenticity and validity of each Loan Document referred to herein, and to the validity of the indebtedness described within those Loan Documents. Borrower further agrees and acknowledges that there are no defenses, set-offs or counterclaims to the indebtedness of Borrower pursuant to the Loan Documents . . . .

4

KPP also expressly released Bayview from all claims arising from the loan:

> Borrower [KPP] releases Servicer [Bayview] . . . from any and all claims, damages or liabilities of any kind existing on the date of this Agreement, which are in any way connected with the Loan, the servicing of the Loan, or events which [led] up to or resulted in the Borrower entering into this Agreement.  Borrower waives any rights which Borrower may have under federal or state statute or common law principle which may provide that a general release does not extend to claims which are not known to exist at the time of execution [of this Agreement] . . . .

In addition, the DRA included a so-called "savings clause," which provided:

> Except as expressly adjusted by this Agreement, all of the covenants, agreements, stipulations and conditions in the Loan Documents remain unmodified and in full force and effect.  The Security Instrument continues to secure on a first and prior lien basis the due and punctual payments of the note, as modified by this Agreement.  None of the Borrower's obligations or liabilities under the security instrument shall be diminished or released by any provisions herein.  Nor shall this Agreement in any way impair, diminish, or affect any of the Borrower's rights or remedies in the Security Instrument, whether such rights or remedies arise herein or by operation of law.  No oral representations have been made by any party hereto which have not been incorporated into this Agreement.  Any inserted terms, changes or additions to this Agreement will immediately render it null and void.  Borrower is encouraged to review this Agreement with his/her legal advisor prior to signing it, but by signing below Borrower has voluntarily signed this Agreement.

Thereafter, KPP brought the loan current and Bayview dismissed the foreclosure proceeding.  KPP continued to make payments to Bayview until November 2011.

## D.    The State Court Litigation

### 1.    Commencement of the State Court Action

In August 2011, KPP sued Bayview, its servicer, and Systo in Maine Superior Court (the "State Court Action") seeking a declaratory judgment that the Note and Mortgage were invalid and unenforceable because MEP had not advanced any funds in connection with the Note.  KPP later sought to amend its complaint to include additional allegations, including that Bayview: (1) pressured KPP into executing the DRA by initiating the foreclosure action;  (2) knew the

5

Wells Fargo mortgage had not been paid off or otherwise satisfied; and (3) knew the funds it advanced to MEP were misapplied. KPP's motion to amend was denied.

## 2. The State Court Order Granting Summary Judgment

Bayview moved for summary judgment, arguing that: (1) the express release in the DRA barred KPP from challenging the enforceability and validity of the Note and Mortgage under the doctrines of promissory estoppel and waiver; and (2) KPP was barred from contesting the validity of the Note because Bayview was a holder in due course.

In November 2016, the superior court granted partial summary judgment in favor of Bayview, ruling that the release in the DRA precluded KPP's challenge to the validity and enforceability of the Note and Mortgage due to a lack of consideration (the "State Court S.J. Order"). The superior court found that the release provision was "broad and unambiguous" and that KPP had failed "to address the release or argue that the release is not valid, does not cover the dispute, or is ambiguous." The court also determined that Bayview's efforts to enforce its rights under the loan documents did not constitute duress which would invalidate the release. Nor were the alleged "improprieties and irregularities" surrounding the actions of Enright, Systo, and MEP in connection with the original loan sufficient to nullify the release. The court concluded that "[a]side from the general allegations as to what transpired in connection with the original loan transaction, and speculation as to what Bayview knew or should have known, KPP has failed to generate a disputed issue of material fact or a valid legal theory that would permit the court to set aside the release agreement." Accordingly, the court held that the release was valid and barred KPP's challenge to the enforceability and validity of the Note and Mortgage.[2]

---

[2] The Maine Superior Court also determined that, in light of this ruling, it was unnecessary to address Bayview's remaining arguments relating to promissory estoppel and its status as a holder in due course.

### 3. The State Court Final Judgment

KPP appealed the ruling of the superior court to the Supreme Judicial Court of Maine (known as the "Law Court"), but its initial appeal was dismissed due to the interlocutory nature of the State Court S.J. Order.  Thereafter, the superior court entered a final judgment in the State Court Action on January 16, 2019 (the "State Court Final Judgment").  KPP moved in the superior court to amend the State Court Final Judgment to acknowledge that the court had not determined the amounts advanced to KPP or owed by KPP under the Note.  The superior court denied that motion, stating:

> Given the conclusion that the 2009 release bars KPP's action against Bayview, it is self-evident from the [State Court S.J. Order] and the [State Court Final Judgment] that that there is neither a need nor basis for the court to adjudicate "the amount actually due and owing under the $600,000 promissory note at issue in this case."  It is also self-evident that there is no basis for proceeding with any further hearing with respect to the same.  This action has been finally adjudicated as a matter of law.

KPP appealed the State Court Final Judgment to the Law Court.  On November 12, 2019, the Law Court affirmed the State Court Final Judgment, ruling that the superior court "did not err in finding that a release of 'any and all claims' executed by KPP in return for Bayview's forbearance in a foreclosure action was valid and 'extinguish[ed] [KPP's] cause of action.'"

## II.     Relevant Proceedings in the Main Bankruptcy Case

### A.     Bayview's Proof of Claim and KPP's Objection

KPP commenced a chapter 11 bankruptcy case in June 2017.[3]  During the pendency of the case, Bayview filed a proof of claim asserting a claim in the amount of $991,660.40 (the "POC"), secured by a mortgage on the Property.  Bayview attached to the POC the Note, the

---

[3]  At the time of the bankruptcy filing, KPP's first appeal of the State Court S.J. Order to the Law Court was still pending.  Pursuant to various orders of the bankruptcy court related to the automatic stay, the subsequent proceedings in the State Court Action proceeded simultaneously with the bankruptcy court proceedings.

Mortgage, and the Assignment of Mortgage from MEP, as well as an itemized statement of interest, fees, and other charges included in its claim.

KPP filed an objection to Bayview's POC (the "Objection to Claim"). As grounds, it asserted that the claim should be disallowed for two reasons: (1) there was a "failure of consideration" as MEP did not advance any funds in exchange for the Note and Mortgage at the time of the transaction or any time thereafter; and (2) KPP did not legally exist at the time they were executed. KPP did not address the DRA or argue it was invalid, non-binding, or unenforceable. Bayview countered that KPP was asserting state law claims and defenses that were, or should have been, raised in the State Court Action.

## III.    The Adversary Proceeding

### A.    The Complaint

In further pursuit of the invalidation of the Note and Mortgage, KPP also commenced an adversary proceeding against Bayview and Enright asserting essentially the same grounds as it had in its objection to Bayview's POC. Specifically, in Count I of the first amended complaint, entitled "Objection to Claim," KPP argued that the Note and Mortgage were unenforceable because KPP did not legally exist at the time the instruments were executed and because no consideration was given for the Note and Mortgage.[4] Consequently, KPP contended, the Note and Mortgage were null and void, and Bayview's claim should be disallowed.

### B.    Bayview's Motion to Dismiss and KPP's Objection

Bayview moved to dismiss the first amended complaint under Rule 12(b)(6). As to Count I, it argued that KPP's cause of action was barred by claim and issue preclusion based on the state court's express determination in the State Court S.J. Order that KPP had waived its right

---

[4] The other counts of the complaint (including those against Enright) were eventually dismissed by the bankruptcy court, and Count I is the only count of the amended complaint at issue in this appeal

to challenge the enforceability and validity of the Note and Mortgage through the release contained in the DRA.

KPP objected to the motion to dismiss arguing, among other things, that Count I was not barred by claim or issue preclusion because it raised issues "based in the Bankruptcy Code and other federal law" that were not, and could not have been, asserted or litigated in the State Court Action. KPP did not invoke any exceptions to the claim preclusion doctrine in its objection.

### C.      The Dismissal Order

In an order dated March 9, 2018 (the "Dismissal Order"), the bankruptcy court granted the motion to dismiss. As to Count I, the bankruptcy court concluded that KPP's challenge to the enforceability of the Note and Mortgage on the state law theories of lack of consideration and lack of corporate existence was barred under the doctrine of claim preclusion.

### D.      Order Granting Motion to Alter or Amend Dismissal Order

KPP moved to alter or amend the dismissal order,[5] contending that the State Court S.J. Order was not entitled to preclusive effect as it was not yet final. (When the bankruptcy court issued its March 2018 order, the State Court Final Judgment had not yet been entered). The bankruptcy court granted KPP's motion, ruling that "Count I is not dismissed under the doctrine of claim preclusion." The court stated, however, that the order was "without prejudice" to Bayview's right, following the entry of a final judgment in the State Court Action, to seek dismissal of Count I on the grounds of res judicata.

---

[5] It also filed a second amended complaint asserting one count against Bayview (Count I) and two counts against Enright. Count I of the second amended complaint was substantively identical to Count I of the first amended complaint and the counts against Enright were eventually dismissed.

## IV.    The Consolidated Matters

The bankruptcy court eventually consolidated the Objection to Claim with the adversary proceeding for purposes of discovery and trial.  However, on November 2, 2018, the court suspended all proceedings in both the main bankruptcy case and the adversary proceeding while the state court litigation proceeded to final judgment.  The state court entered the State Court Final Judgment in January 2019, and the consolidated matters were tried before the bankruptcy court on November 19, 2019.

Several days before trial, Bayview filed a motion to amend its POC to correct the amount of pre-petition attorney's fees and interest included in the claim, which the bankruptcy court granted over KPP's objection.

### A.    The Consolidated Bankruptcy Trial

At the November 2019 trial, the bankruptcy court considered KPP's Objection to Claim and Count I of the second amended complaint.[6]  During the hearing, the bankruptcy court denied KPP's request to introduce deposition testimony from Bayview's corporate designee, Ann Snyder.  The court concluded her testimony lacked relevancy because KPP was barred from challenging the prima facie validity of Bayview's POC "for two independent reasons."  The court explained:

> First, the DRA and the waivers in the DRA which explicitly acknowledge the
> validity of the instruments and the debt and, second, the res judicata effect of the
> final order in the State Court action which under claim preclusion principles bars
> any attempt by KPP to relitigate matters that were decided in the State Court
> action.  We now have a final judg[]ment in the State Court action and . . . that
> action involved both KPP and Bayview so it's the same parties, the challenge to
> the validity of the note was in fact litigated[,] any legal theory relating thereto
> could have been litigated and therefore the final judg[]ment bars KPP from
> challenging the note on the theories that KPP would like to advance.

---

[6] The trial also included a final hearing on confirmation of KPP's chapter 11 plan.  Plan confirmation is not at issue in this appeal.

The court also rejected KPP's attempts to elicit testimony from both Ms. Snyder and Mrs. Austin about whether MEP advanced funds to KPP or paid Wells Fargo to discharge its mortgage, again determining it was not relevant in light of the preclusive effect of the State Court Final Judgment.

### B.     The Order Allowing Bayview's Claim

On December 20, 2019, the bankruptcy court entered an order in the main bankruptcy case (the "Claim Order") overruling KPP's Objection to Claim and allowing Bayview's secured claim in the amount of approximately $1.6 million.  See In re Kittery Point Partners, LLC, 613 B.R. 42 (Bankr. D. Me. 2019).  In the Claim Order, the bankruptcy court ruled that the POC was "prima facie evidence of the validity and amount of Bayview's claim," id. at 44, and that KPP failed to meet its burden of producing "substantial evidence" to overcome the presumptive validity of Bayview's claim:

> The evidence offered by the Debtor was designed to bolster its theories that Bayview's claim is unenforceable due to a lack, or a failure, of consideration.  As the Court concluded during the hearing, that line of attack—and all of its many iterations—is doubly foreclosed: first, by the [DRA] executed by the Debtor and Bayview in 2009 . . . and the waivers in that document explicitly acknowledging the validity of the Note, the Mortgage, and the debt; and second, by the preclusive effect of the final order in the state court action between the Debtor and Bayview concerning the validity of the Note and Mortgage . . . .

Id. at 45.

The court concluded that the elements of Maine's claim preclusion doctrine were satisfied as: (1) the same parties were involved in the State Court Action; (2) a final judgment was entered in that litigation; and (3) the matters presented in the bankruptcy court were, or could have been, litigated in the State Court Action.  As to the third element, the bankruptcy court explained that KPP was seeking to challenge the enforceability of the Note and Mortgage on the grounds that consideration was lacking at the outset of the transaction and that

11

consideration later failed. The lack of consideration theory, the court concluded, was already litigated in state court and could not be relitigated. Moreover, the failure of consideration theory was also barred because it arose out of the same set of facts and could have been litigated in the State Court Action. Id. at 48. For the same reasons, the bankruptcy court also rejected KPP's argument, presented for the first time at trial, that the so-called savings clause in the DRA permitted it to press its failure of consideration theory. The court stated that the State Court Action "was squarely focused on whether the DRA barred the Debtor's efforts to contest the validity of the Note and Mortgage," and the savings clause argument could have been litigated in that action. Id.

The court also rejected KPP's argument that res judicata was not applicable because the state court did not determine the amount of the debt owed by KPP:

> Although the Debtor makes much of the fact that the state court did not determine the amount of the debt, and the Debtor seeks to characterize the Objection to Claim as an effort to determine the amount of the debt, the Objection to Claim is concerned entirely with the Debtor's efforts to challenge the validity and existence of the debt. If the Debtor had not already spent years litigating the validity of the Note and Mortgage, then it might have more arrows in its quiver in this chapter 11 case. But neither the chapter 11 case nor the adversary proceeding give the Debtor the opportunity to relitigate matters that were, or might have been, litigated in the state court action.

Id.

Based on the foregoing, the bankruptcy court held that the "evidence offered by [KPP] in support of the Objection to Claim only supports legal theories that are barred by the doctrine of claim preclusion," and, therefore, was insufficient to rebut the prima facie validity of Bayview's POC. Id. at 49. The bankruptcy court then calculated post-petition interest, late charges, and attorney's fees, and arrived at an allowed secured claim for Bayview of $1,673,332.74. Id. at 51.

12

### B.    The Final Judgment in the Adversary Proceeding

On that same day, the bankruptcy court entered judgment in favor of Bayview on Count I of the second amended complaint "[f]or the reasons set forth in the Claim Order" (the "AP Judgment").

This appeal followed.[7]

## POSITIONS OF THE PARTIES ON APPEAL

### I.    KPP

KPP argues that the bankruptcy court misapplied the Maine claim preclusion doctrine to exclude evidence proffered to demonstrate that no money had been advanced as consideration for the Note and that no money was owed to Bayview thereunder. It contends that the bankruptcy court incorrectly determined that the amount owed under the Note was a matter that could have been litigated in the State Court Action and was barred under the doctrine of claim preclusion. KPP also asserts that the bankruptcy court overlooked certain exceptions to the claim preclusion doctrine set forth in § 26(1)(d) and (e) of the Restatement (Second) of Judgments (1982) (the "Restatement") which, if properly applied, would have "removed any bar to the evidence proffered by KPP at trial."[8]

---

[7] KPP indicated in its notice of appeal that it was also appealing the bankruptcy court's prior "then-interlocutory" Dismissal Order entered on March 9, 2018 and the related Memorandum of Decision dated March 12, 2018. It clarified in its appellate brief, however, that it was only challenging the judgment as to Count I of the complaint, and that it was "not appealing the dismissal of the other counts of that Complaint." Moreover, KPP does not challenge any portion of the Dismissal Order in its brief, including the bankruptcy court's rulings in that order as to Count I. KPP has, therefore, waived any appeal of the Dismissal Order. See United States v. Bayard, 642 F.3d 59, 63 (1st Cir. 2011) (stating an appellant's failure to brief an issue waives it). Accordingly, we summarily affirm the Dismissal Order. See 1st Cir. BAP L.R. 8013-1(c)(2) (authorizing summary disposition, including affirmance, "if it appears that no substantial question is presented").

[8] Restatement § 26(1)(d) provides that the principles of claim preclusion will not bar a second action if preclusion would frustrate "the fair and equitable implementation of a statutory or constitutional scheme," such as the Bankruptcy Code. Under Restatement § 26(1)(e), claim preclusion will not bar a second action if the second case arises from "continuing performance of a contract or other transaction at issue in the first action, and is based on claims not then ripe for adjudication."

## II.    Bayview

Bayview counters that the Claim Order and the AP Judgment should be affirmed based on the plain language of the DRA, wherein KPP expressly acknowledged the validity of the Note, Mortgage and the debt owed to Bayview, and released all claims against Bayview.  It also asserts that the bankruptcy court correctly applied the claim preclusion doctrine to bar the evidence proffered by KPP in support of its position that the Note and Mortgage were unenforceable due to a lack or failure to consideration.  Finally, Bayview maintains that KPP cannot invoke the exceptions to claim preclusion set forth in Restatement § 26(1)(d) and (e) because, in addition to their inapplicability here, KPP did not raise this argument in the proceedings below and did not preserve it for appeal.

## JURISDICTION

We may hear appeals from "final judgments, orders, and decrees."  28 U.S.C. § 158(a), (c); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 587 (2020); Bullard v. Blue Hills Bank, 135 S. Ct. 1686, 1692 (2015).  Final orders are those that "finally dispose of discrete disputes within the larger case."  Bullard, 135 S. Ct. at 1692 (citation omitted) (internal quotation marks omitted).  Typically, the "'resolution of an adversary proceeding'" constitutes a "'disposition of a discrete dispute'" within the bankruptcy case.  Fleet Data Processing Corp. v. Branch (In re Bank of New Eng. Corp.), 218 B.R. 643, 647 (B.A.P. 1st Cir. 1998) (citation omitted).  Here, the AP Judgment is a final order as it resolved the adversary proceeding.  See id. The Claim Order is also a final, appealable order.  See In re Thomas, 511 B.R. 89, 92 (B.A.P. 6th Cir. 2014) (stating that a bankruptcy court order overruling an objection to a proof of claim is a final, appealable order), aff'd, 591 F. App'x 443 (6th Cir. 2015).  Accordingly, we have jurisdiction to review the Claim Order and AP Judgment.

14

We review the allowance or disallowance of a claim under the abuse of discretion standard. See, e.g., RNPM, LLC v. Mercado Alvarez (In re Mercado Alvarez), 473 B.R. 853, 859 (B.A.P. 1st Cir. 2012) (citation omitted). A lower court's exclusion of evidence is also reviewed for an abuse of discretion. Achille Bayart & Cie v. Crowe, 238 F.3d 44, 47 (1st Cir. 2001) (citation omitted). "The applicability of the res judicata doctrine presents a question of law requiring de novo review." Blacksmith Invs., Inc. v. Woodford (In re Woodford), 418 B.R. 644, 650 (B.A.P. 1st Cir. 2009) (citations omitted). "Whether a contract is clear or ambiguous is also a question of law, subject to de novo review." Dahar v. Raytheon Co. (In re Navigation Tech. Corp.), 880 F.2d 1491, 1495 (1st Cir. 1989) (citations omitted).

## DISCUSSION

**I.      The Legal Framework Governing the Filing and Allowance of Claims**

**A.      Sections 501 and 502**

"Sections 501 and 502 govern the filing and allowance of creditor claims in bankruptcy proceedings." Am. Express Bank, FSB v. Askenaizer (In re Plourde), 418 B.R. 495, 502 (B.A.P. 1st Cir. 2009) (citing Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443 (2007)).[9] "When a debtor files for relief, each creditor is entitled to file a proof of claim against the debtor's estate pursuant to § 501." Id. Once a creditor has filed a proof of claim, "the bankruptcy court must determine whether the claim is 'allowed.'" Id. Section 502 "provides that a proof of claim . . . is allowed in the absence of objection . . . ." Tracey v. United States (In re Tracey), 394 B.R. 635, 638-39 (B.A.P. 1st Cir. 2008). "However, even where a party in

---

[9] All references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101-1532. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

15

interest objects, the court 'shall allow' the claim unless one of nine exceptions enumerated in

§ 502(b) applies." In re Plourde, 418 B.R. at 503 (citing 11 U.S.C. § 502(b)).

### B.    Bankruptcy Rule 3001

Bankruptcy Rule 3001 establishes "the procedural framework for the filing and

allowance of claims" and "regulate[s] the form, content, and attachments for proofs of claim."

Id.  It provides, in pertinent part:

> **(a) Form and Content.**  A proof of claim is a written statement setting forth a creditor's claim.  A proof of claim shall conform substantially to the appropriate Official Form.

> **(b) Who May Execute.**  A proof of claim shall be executed by the creditor or the creditor's authorized agent except as provided in Rules 3004 and 3005.

> **(c) Supporting Information.**

>> (1) Claim Based on a Writing.  Except for a claim governed by paragraph (3) of this subdivision, when a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim. . . .

Fed. R. Bankr. P. 3001(a)-(c)(1).  "A claim arising from a loan obligation . . . is one that is

'based on a writing' and under Rule 3001(c) requires the creditor to attach some supporting

documentation in order for the claim to be prima facie valid." In re Diamonds & Diamonds Inc.,

No. 17-04882 (MCF), 2019 WL 1752695, at *6 (Bankr. D.P.R. Apr. 16, 2019).

Bankruptcy Rule 3001(f) sets forth "the evidentiary effect of a properly filed proof of

claim (i.e., one that complies with the requirements of the rule and form), stating that a claim

'filed in accordance with these rules shall constitute prima facie evidence of the validity and

amount of the claim.'" In re Plourde, 418 B.R. at 504 (quoting Fed. R. Bankr. P. 3001(f)) (other

citations omitted).

## C.      Rebutting the Prima Facie Validity of a Proof of Claim

An objection does not overcome the presumption of prima facie validity of a filed claim unless supported by "substantial evidence." Juniper Dev. Grp. v. Kahn (In re Hemingway Transp., Inc.), 993 F.2d 915, 925 (1st Cir. 1993) (emphasis omitted) (citations omitted).  The objector has the "initial burden of producing substantial evidence" in opposing a claim.  In re Hayes, 240 B.R. 457, 462 (Bankr. D. Mass. 1999).  The degree of "substantial evidence" required to rebut the prima facie status of a properly filed proof of claim is not defined under the Bankruptcy Code or the Bankruptcy Rules.  In re Williams, No. 92-50546, 1994 WL 329328, at *2 (Bankr. S.D. Ga. Mar. 30, 1994).  Some courts have determined that the objecting party "must produce evidence equal in force to the *prima facie* case."  In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992) (citations omitted); see also Fullmer v. United States (In re Fullmer), 962 F.2d 1463, 1466 (10th Cir. 1992) ("To overcome this prima facie effect, the objecting party must bring forward evidence equal in probative force to that underlying the proof of claim.") (citation omitted).  "Mere allegations, unsupported by evidence, are insufficient to rebut the [claimant's] prima facie case."  Toma Steel Supply, Inc. v. TransAmerican Nat. Gas Corp. (In re TransAmerican Nat. Gas Corp.), 978 F.2d 1409, 1416 (5th Cir. 1992).

The grounds for disallowing a claim are set forth in § 502(b)(1)-(9).  See 11 U.S.C. § 502(b)(1)-(9); see also Walston v. PYOD, LLC (In re Walston), 606 F. App'x 543, 547 (11th Cir. 2015).  Here, KPP did not specify the statutory basis for its objection.  However, we construe the substance of KPP's objection as falling under § 502(b)(1), which provides that the court may disallow a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . . ."  11 U.S.C. § 502(b)(1).

## II. Applying the Standards

### A. Prima Facie Validity of the POC

Through the POC, Bayview asserted a claim against KPP's estate secured by the Mortgage. To its POC, Bayview attached as supporting documentation the Mortgage, the Note and the Assignment of Mortgage from MEP to Bayview, which reflected a transfer of certain rights from KPP to MEP in 2005 in exchange for a loan evidenced by the $600,000 Note, and then another transfer of rights from MEP to Bayview. It also included an itemized statement setting forth the amount of interest, fees, and other charges included in the claim, as well as the amount of arrears owed. See Fed. R. Bankr. P. 3001(c)(2)(A)-(B). KPP did not identify any deficiency in the execution or filing of the POC. The bankruptcy court, after reviewing the POC, properly concluded it was executed and filed in accordance with the applicable Bankruptcy Rules. As such, the court further determined that the POC constituted prima facie evidence of the validity and amount of Bayview's claim, and it was KPP's burden to rebut the claim with substantial evidence.

In an effort to rebut the prima facie validity of the POC, KPP filed the Objection to Claim and the adversary proceeding, raising similar challenges to the validity of the Note and Mortgage in both. In Count I of the amended complaint, it argued that the Note and Mortgage were unenforceable due to a "lack of consideration" and lack of corporate existence. In the Objection to Claim, KPP contended that Bayview's claim should be disallowed because of a "failure of consideration." As to the latter, KPP contended there was a failure of consideration as MEP promised to pay off Wells Fargo's first mortgage on the Property and advance funds to KPP in exchange for the rights KPP granted to MEP in the Note and the Mortgage, and MEP could have performed these obligations at any time prior to the commencement of the chapter 11 case, but never did.

18

To support its arguments, at trial KPP sought to introduce deposition and witness testimony to establish that MEP had not advanced funds to KPP and did not pay off the Wells Fargo mortgage. Additionally, it sought to show that Bayview knew that MEP had not advanced the funds as promised. However, as discussed below, we conclude that KPP's legal theories to attack the enforceability of the Note and Mortgage were barred by the preclusive effect of the State Court Final Judgment upholding the validity of the Note and Mortgage as well as by the unambiguous release contained in the DRA. Accordingly, the bankruptcy court did not abuse its discretion by excluding KPP's proffered evidence for lack of relevancy, in determining that KPP had failed to present substantial evidence to rebut the prima facie validity of Bayview's POC, or by allowing Bayview's claim. For the same reasons, the bankruptcy court did not err in entering the AP Judgment in favor of Bayview.

## B. The Preclusive Effect of the State Court Final Judgment

We begin our analysis by considering the preclusive effect of the State Court Final Judgment and the doctrine of res judicata.

### 1. State Law Claim Preclusion

"[A] judgment rendered in a state court is entitled to the same preclusive effect in federal court as it would be given within the state in which it was rendered." Pisnoy v. Ahmed (In re Sonus Networks, Inc.), 499 F.3d 47, 56 (1st Cir. 2007) (citing Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984)). Hence, the preclusive effect of the State Court Final Judgment is determined under Maine law.

The Maine Law Court opined that "[t]he doctrine of *res judicata* is a court-made collection of rules designed to ensure that the same matter will not be litigated more than once." Macomber v. MacQuinn-Tweedie, 834 A.2d 131, 138 (Me. 2003) (quoting Machias Sav. Bank v. Ramsdell, 689 A.2d 595, 599 (Me. 1997)). The res judicata doctrine "has two components:

19

collateral estoppel, also known as issue preclusion, and claim preclusion." Fed. Nat'l Mortg. Ass'n v. Deschaine, 170 A.3d 230, 236 (Me. 2017) (quoting Wilmington Tr. Co. v. Sullivan-Thorne, 81 A.3d 371, 375 (Me. 2013)).  Issue preclusion is not implicated here, so our focal point is claim preclusion.  This component of res judicata "bars the relitigation of claims if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action." Id. (quoting Wilmington Tr. Co., 81 A.3d at 375).  "Claim preclusion is based on the idea that the precluded litigant had the opportunity and incentive to fully litigate the claim in an earlier action, so that all matters that were or could have been adjudicated in the earlier action on the claim are considered to have been finally settled by the first judgment." In re Sonus Networks, Inc., 499 F.3d at 56 (citation omitted).

## 2.     The Elements of Claim Preclusion are Satisfied

We easily conclude that the first two elements of the claim preclusion doctrine are satisfied.  There is no dispute that KPP and Bayview were involved in the litigation in the Maine state courts and again in the adversary proceeding and the contested claim objection before the bankruptcy court.  Clearly, the first element of the doctrine has been met as the same parties have been involved in all of these disputed matters.  And a binding final judgment was entered in the State Court Action, thus satisfying the second element.  That leaves only the third element of the doctrine: whether the matters presented in the bankruptcy court proceedings were, or could have been, litigated in the State Court Action.

Again, we look to Maine law.  In evaluating the application of this prong of the doctrine, Maine courts focus on "whether the same cause of action was before the court in the prior case." Deschaine, 170 A.3d at 236 (quoting Wilmington Tr. Co., 81 A.3d at 375).  The court must consider whether the causes of action "were founded upon the same transaction, arose out of the

20

same nucleus of operative facts, and sought redress for essentially the same basic wrong[.]" Wilmington Tr. Co., 81 A.3d at 375 (citation omitted) (internal quotation marks omitted). Notably, "[c]laim preclusion may apply even where a suit relies on a legal theory not advanced in the first case, seeks different relief than that sought in the first case, or involves evidence different from the evidence relevant to the first case." Id. (citation omitted) (internal quotation marks omitted).

Applying these principles to the present case, we have no difficulty concluding that the third element of the claim preclusion doctrine has been met. Without question, the same loan transaction was at the heart of the State Court Action, the adversary proceeding, and the Objection to Claim. In the State Court Action, KPP challenged the validity of the Note and Mortgage on the basis that consideration was lacking at the outset of the transaction because MEP did not advance any funds in exchange for the Note. When it granted summary judgment in favor of Bayview, the state court determined that the broad and unambiguous release contained in the DRA was valid and extinguished KPP's cause of action to invalidate the Note and Mortgage due to a lack of consideration. KPP's efforts to modify the summary judgment order and to overturn it on appeal were unsuccessful and, therefore, the state court's grant of summary judgment is binding on KPP. In the adversary proceeding, KPP again challenged the enforceability of the Note and Mortgage on essentially the same grounds. We agree with the bankruptcy court that the lack of consideration theory, having been previously litigated in the State Court Action, was properly barred under the claim preclusion doctrine.

For similar reasons, we conclude that KPP's alternative "failure of consideration" theory advanced in the Objection to Claim, but not specifically raised as a legal theory in the State Court Action, was also foreclosed. We agree with the bankruptcy court that the "basic wrong" for which KPP sought relief under the failure of consideration theory was MEP's alleged failure

21

to advance funds in exchange for the Note at the time of the transaction or any time thereafter. This was the same "basic wrong" arising out of "the same transaction" and "the same nucleus of operative facts" for which KPP sought relief in the State Court Action. Wilmington Tr. Co., 81 A.3d at 375. Because this challenge could have been interposed in the State Court Action, it was properly barred in the contested bankruptcy matter. Additionally, given that the State Court Action centered on whether the DRA precluded KPP's efforts to contest the validity of the Note and Mortgage, KPP's argument that the savings clause in the DRA still permitted KPP to present its failure of consideration challenge could have been litigated in the State Court Action. The same holds true with respect to KPP's contention that it was seeking an order determining the amount paid and owed under the Note, which was not litigated in the State Court Action. As we have already stated, the sole purpose of the Objection to Claim was to challenge the validity and existence of the debt arising under the Note and Mortgage, a matter that was already decided in the State Court Action and, therefore, could not be relitigated in the bankruptcy case.

Accordingly, we conclude that the bankruptcy court did not err in determining the claim preclusion doctrine barred KPP from asserting that the Note and Mortgage were unenforceable due to a lack or failure of consideration.

## 2.       Exceptions to the Claim Preclusion Doctrine

KPP devotes a meaningful portion of its appellate brief to the argument that the bankruptcy court erred by "overlooking" two exceptions to the claim preclusion doctrine set forth in Restatement § 26(1)(d) and (e) which, if properly applied in this case, "would have removed any bar to the evidence proffered by KPP at trial." This argument is raised for the first time on appeal. Despite ample opportunity to present this argument in the proceedings below, at no point did KPP identify the exceptions to the claim preclusion doctrine set forth in the Restatement or contend that they applied; rather, it argued only that the elements of claim

22

preclusion were not satisfied.  It is well established in the First Circuit that "legal theories not raised squarely in the lower court cannot be broached for the first time on appeal." Pomerleau v. W. Springfield Pub. Schs., 362 F.3d 143, 146 (1st Cir. 2004) (citations omitted) (internal quotation marks omitted); see also Hoover v. Harrington (In re Hoover), 828 F.3d 5, 11 (1st Cir. 2016) (ruling that argument not made to the bankruptcy court was waived on appeal) (citation omitted).

KPP acknowledges it did not raise specific arguments relating to the applicability of Restatement § 26(1)(d) and § 26(1)(e) in the bankruptcy court proceedings.  It maintains, however, that it preserved this argument for appeal by asserting that claim preclusion was inapplicable because the state court did not determine the amounts that had been advanced under the Note or the amount owed by KPP.  This contention conflates two separate legal concepts: failure to satisfy an element of claim preclusion versus applicability of certain exceptions to the claim preclusion doctrine.  In short, KPP's reliance on the applicability of Restatement § 26(1)(d) and (e) presents an entirely new legal theory which was not "raised squarely" before the bankruptcy court. See Pomerleau, 362 F.3d at 146.  Accordingly, it is waived for purposes of this appeal.

## C.      The Release Provision of the DRA

Even were we to conclude that KPP's challenges to the validity of the Note and Mortgage were not barred by the State Court Final Judgment, KPP still would not prevail because its attack is also precluded by the unambiguous terms of the DRA.

Our analysis begins with the DRA itself and is governed by general principles of contract law. See, e.g., 2301 Cong. Realty, LLC v. Wise Bus. Forms, Inc., 106 A.3d 1131, 1133 (Me. 2014) (examining contract containing release provision under general contract principles).  "If a contract is unambiguous," its interpretation is a question of law, and the court will "interpret it

23

according to the plain meaning of the language used, without resort to extrinsic evidence." <u>Bank of N.Y. Mellon, N.A. v. Re/Max Realty One</u>, 91 A.3d 1059, 1062 (Me. 2014) (citations omitted) (internal quotation marks omitted). Under Maine law, "a general release will extinguish all claims between the parties which existed as of the time of execution." <u>Key Bank of Me. v. Pepperell Tr. Co.</u>, No. CV 89-864, 1994 Me. Super. LEXIS 15, at *11 (Me. Super. Ct. Jan. 13, 1994); <u>see also</u> <u>Glynn v. Atl. Seaboard Corp.</u>, 728 A.2d 117, 119 (Me. 1999) ("[A] valid release will extinguish a cause of action" in the absence of "fraud, misrepresentation, or overreaching.") (citations omitted). A party challenging the validity of a release has the burden of proving its invalidity. <u>See</u> <u>Borden v. Sandy River & R.L.R. Co.</u>, 86 A. 242, 243 (Me. 1913).

The release contained in the DRA is broad and unambiguous. In the DRA, KPP explicitly acknowledged the "authenticity and validity" of the Note and Mortgage, as well as the "validity of the indebtedness described" therein. It also agreed there were "no defenses, set-offs, or counterclaims" to its indebtedness under the loan documents. Further, KPP expressly released Bayview from "any and all claims, damages or liabilities of any kind existing on the date of this Agreement, which are in any way connected with the Loan . . . ." Thus, under the DRA's unambiguous language, KPP relinquished its right to challenge the validity or enforceability of the Note and Mortgage.

KPP has never suggested, below or on appeal, that the DRA was ambiguous. Further, it has not argued, let alone demonstrated, that the DRA was invalid, non-binding, or unenforceable. Its only argument was that the savings clause in the DRA permitted it to pursue its failure of consideration theory. But that argument also fails because, while the so-called savings clause may have preserved certain rights and remedies under the Mortgage, it did not invalidate the broad release contained in the DRA. In fact, the savings clause in the DRA expressly provided that the Debtor's rights under the loan documents were unmodified "[e]xcept as expressly

24

adjusted by this Agreement . . ."  In short, KPP offered nothing to refute the validity of the release and, therefore, it remained enforceable.  We discern no error in the bankruptcy court's ruling that KPP's challenges to the validity of the Note and Mortgage were foreclosed by the express terms of the DRA.

## CONCLUSION

For the foregoing reasons, we conclude that the bankruptcy court did not abuse its discretion in allowing Bayview's POC or err in entering the AP Judgment in the adversary proceeding.  Accordingly, we **AFFIRM** the Claim Order and the AP Judgment.  We also summarily **AFFIRM** the Dismissal Order.